# Commonwealth *v.* Snyder, Appellant.

*Criminal law—Murder—Insanity—Epilepsy.*

1. On the trial of an indictment for murder a mere offer to prove that the prisoner prior to the killing had been subject to attacks of epilepsy is properly overruled where there is no evidence produced or offered to show that the prisoner was in fact insane. The law derives no immediate presumption of insanity from the fact of epilepsy, but leaves the insanity to be proved as any other defense not by secondary evidence as proof of epilepsy would be, but by evidence establishing the direct fact; nor is evidence of epilepsy admissible even when the offer is accompanied by an offer to prove intoxication.

2. It may be a physiological fact that one effect of epilepsy is to pro-

duce a state of mind easily excited by provocation, and that this state of mind is intensified by intoxication to a degree that would be unexpected in one not epileptic from the same amount of drink; but except as the epilepsy can be shown to have resulted in an unsoundness, which by itself would excuse an act, it cannot become a factor in determining the question of guilt or innocence. The epileptic who is not shown to be insane, can no more escape liability for his acts done while intoxicated, than can one not so affected.

*Criminal law—Confessions—Murder.*

3. On the trial of an indictment for murder the prisoner's pastor accompanied by the officer who made the arrest visited the prisoner, and the clergyman said to the prisoner that it would be better for him to tell the truth, adding that he, the speaker, could do more for him if he told the truth. Before the defendant had an opportunity to express himself at all, the officer interfered with the remark, "Reverend, as a detective, I wish you would not make a remark of that kind. I may be a witness against him, and I can offer him no promise of any kind, and I hope you don't mention that again." It was after being thus cautioned that the defendant made a confession. *Held,* that the confession was admissible in evidence.

*Criminal law—Murder—Points for charge.*

4. On the trial of an indictment for murder, points predicated on a killing as the result of a sudden impulse or impetuous temper, are properly refused where there is no evidence whatever that the killing was the result of sudden impulse.

*Criminal law—Murder—Intoxication.*

5. On the trial of an indictment for murder an offer to show that the prisoner was under the influence of liquor at the time of the killing, is properly overruled where there is no offer to show the degree of intoxication, or that the prisoner was so much intoxicated that his mind was incapable of forming a deliberate intent or premeditated design to kill and carry it out.

6. Where the prisoner and several of his witnesses have testified to the number of drinks he had taken, and he himself had testified fully as to the extent of his intoxication, it is not reversible error to ask the prisoner when recalled to the stand as to the amount of liquor he had drunk during the evening of the occurrence.

Argued March 1, 1909. Appeal, No. 44, Jan. T., 1909, by defendant, from judgment of O. & T. York Co., Jan. T., 1908, No. 19, on verdict of guilty of murder of the first degree in case of Commonwealth v. Henry Snyder. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Indictment for murder. Before WANNER, J.

At the trial it appeared that the prisoner was charged with the murder of William Hoover on November 16, 1907. There was evidence that William Hoover and his brother, Kerwin Hoover, were found unconscious on the morning of November 17, 1907, on a public road in the village of Pleasureville. Both were shot in the head and both died without gaining consciousness. A number of offers of evidence were made tending to show that the prisoner had been subject to epileptic fits from his youth, and that on the night of the occurrence he had been with the Hoovers, and that he was intoxicated at the time.

Other facts appear by the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.

*Errors assigned* were various rulings on evidence and instructions.

*John A. Hoober* and *Allen C. Wiest,* with them *Paul O. Menges* and *J. W. Gitt, Jr.,* for appellant.—The offers all showed a state of irresponsibility which our law recognizes as destroying the criminality of an act because they subjugated and controlled the will and took away the freedom of moral action: Ortwein v. Com., 76 Pa. 414, 424, 425; Taylor v. Com., 109 Pa. 262; Brown v. Com., 78 Pa. 122.

All matters alleged to prove insanity prior to the homicide are valuable as presumptive proof that the defendant was insane at the precise moment of the homicide: Com. v. Shurlock, 14 Legal Int. 33.

The Supreme Court has repeatedly approved the admission of evidence prior to the homicide: Com. v. Gerade, 145 Pa. 289; Com. v. Preston, 188 Pa. 429; Com. v. Hillman, 189 Pa. 548; Com. v. Bezek, 168 Pa. 603; Com. v. Eckerd, 174 Pa. 137; Laros v. Com., 84 Pa. 200; McMeen v. Com., 114 Pa. 300; Hopkins v. Com., 50 Pa. 9; Sayres v. Com., 88 Pa. 291; Com. v. Buccieri, 153 Pa. 535; Gross v. State, 62 Md. 179.

*William L. Ammon,* district attorney, with him *Harvey A.*

*Gross*, assistant district attorney, for appellee.—The authorities are clear that mere proofs of epilepsy, even in a severe form, are not sufficient to establish such insanity as excuses crime: Laros v. Com., 84 Pa. 200; Com. v. Buccieri, 153 Pa. 535; Com. v. Gerade, 145 Pa. 289; Ortwein v. Com., 76 Pa. 414; Com. v. Mosler, 4 Pa. 264.

Mere drunkenness does not avoid responsibility. It is the universal rule that voluntary intoxication is no justification or excuse for crime: Keenan v. Com., 44 Pa. 55; Com. v. Cleary, 148 Pa. 26; Com. v. Hart, 2 Brewster, 546; Com. v. McFall, 1 Addison, 255; Com. v. McGowan, 189 Pa. 641.

A confession procured by artifice is not for that reason inadmissible unless the artifice was calculated to produce an untrue confession: Com. v. Goodwin, 186 Pa. 218.

Opinion by Mr. Justice Stewart, April 26, 1909:

Six of the assignments of error have been abandoned. Of those remaining, eight have regard to rulings of the court on offers of evidence which in purpose and effect were substantially the same. In each instance the offer was to show that the defendant in the early years of his life was subject to frequent attacks of convulsions or spasms, which for the time being rendered him unconscious; that after his twelfth year the attacks became less frequent, much milder in form, never attended with unconsciousness; that he is still subject to these attacks in modified form, and that he suffered one as recently as the day before the crime was committed with which he is charged; this, to be followed by medical expert opinion predicated on the facts proposed to be shown as to the character and frequency of these attacks, that they were epileptic seizures, and further that because of this infirmity, and the added circumstance, already appearing in the evidence, that defendant had been drinking during the afternoon and evening of the occurrence, if it was he who killed Hoover, he was at the time acting under an uncontrollable epileptic impulse during which it was impossible for him to distinguish right from wrong, and during which it was impossible for him to deliberate or consider the nature and consequence of his act.

The offers as we have said were substantially the same; they differed only in matter of detail. The same purpose, however, was not stated in connection with each. At one time it was to show insanity by way of defense; at another a condition of mind which should operate to reduce the grade of the crime. The learned trial judge rejected them all, and in this we think he was entirely right. The offers associated and combined two mental conditions which need always to be clearly distinguished where the effort is to refer an illegal act to their joint influence, insanity and intoxication. The former excuses the act; the latter at most can only mitigate its criminality. The unsoundness that excuses must be so great as to control the will of the subject and deprive him of free moral action. When this mental condition has been shown, the defense is complete and absolute, and it helps nothing to show in addition that the unfortunate subject was intoxicated as well. When the unsoundness is not of the degree which exempts from legal liability, it helps nothing to show intoxication by way of excusing. It may be a physiological fact that one effect of epilepsy is to produce a state of mind easily excited by provocation, and that this state of mind is intensified by intoxication to a degree that would be unexpected in one not epileptic from the same amount of drink; but except as the epilepsy can be shown to have resulted in an unsoundness, which by itself would excuse an act, it cannot become a factor in determining the question of guilt or innocence. The epileptic who is not shown to be insane, can no more escape liability for his acts done while intoxicated, than can one not so affected. Were it otherwise, it would follow that in every case where intoxication is set up, a necessary inquiry would be the susceptibility of the party to intoxicating influence; and the question of guilt would be made to depend upon peculiarity of individual temperament as affected by drink. The law knows no such doctrine; it does not divide men into classes according to temperament or intellect, judging some more favorably than others, but it judges all alike. It follows that in ruling upon the offers which were made to show mental condition which would excuse, the court could have no regard to

what was therein included as showing intoxication. No more could the expert witnesses in forming their opinion. And yet the offers without the expert opinions could have served no purpose whatever. The facts proposed to be shown were to be introduced for no other purpose than to lay the foundation for such testimony based upon the concurrence of disease and intoxication. Any such opinion based on one or the other of these alone would not be within the offer. If based on intoxication alone, it would be valueless, for that in law does not excuse; it would be but little better if based on the testimony as to defendant's epilepsy, for the court would have been bound to hold that whatever the medical expert might say, the law derived no immediate presumption of insanity from the fact of epilepsy, but leaves the insanity to be proved as any other defense, not by secondary evidence, which at best this would be, but by evidence establishing the direct fact: Laros v. Com., 84 Pa. 200. In the case cited it was said with respect to similar offers of testimony: "They were all offers collateral or secondary to the proof of insanity, and were not admissible until direct evidence of the prisoner's insanity had been given. A court is not bound to hear evidence of the insanity of a man's relatives, or evidence of his proper instruction in morals and religion, or of the kind treatment of his relatives and friends, as grounds of a presumption of possible insanity, until some evidence has been given that the prisoner himself has shown signs of his own insanity. Now when these offers were made, no evidence of his own insanity had been given. That he had at long intervals before the week of the murder suffered spasms or fits of some kind affecting him bodily is all that had been proved, but no mental unsoundness has been shown. These offers were not renewed after evidence was given of an affection resembling epilepsy, and a possible epileptic insanity. Indeed, the evidence of even a possible epileptic insanity was so weak it would scarcely have been substantial error to reject the evidence a second time. It must not be forgotten that according to the evidence, or even according to common observation, epilepsy is not commonly followed by insanity, until after a long time from the first attack, and that the proof

of epilepsy furnishes no immediate presumption of insanity." The offers of evidence in the present case were intended to raise hypothetical questions. They were all defective, some in embracing too much, others too little. We have said that what was proposed to be proved on the score of insanity was purely secondary. The case stood thus on the evidence: The defendant, a young man who had passed his majority, was shown to have lived his entire life in the district in which he was born, and was generally acquainted throughout the community. Many of his neighbors and acquaintances had been called to testify as to his reputation for peaceableness. Not one was asked a question touching his sanity, and not a single irrational act or speech during the whole period of his life had been shown. The first and only suggestion of insanity came with the offers to show epileptic seizures to the extent indicated, and this not by physicians who had ever seen the defendant when under an attack or while recovering therefrom, but by parties without professional skill, who it is said would testify that the physician who attended the defendant when a child had pronounced the attacks epileptic in character. Not only was the evidence proposed secondary, and for that reason properly excluded, but it did not in any reasonable way tend to prove the fact alleged. These assignments of error are overruled.

The twelfth and thirteenth assignments complain of the admission of evidence showing certain confessions made by the defendant to his pastor Dr. Stump and others. The evidence was objected to on the ground that the confessions were made in consequence of inducement held out by Dr. Stump. It does not appear that any of the other witnesses who testified to confessions offered any inducement whatever to defendant to admit his guilt. To some of them the admissions were made days after the interview between the defendant and Dr. Stump; but it was contended that nevertheless it was not shown that the influence of the promise or inducement extended by the latter had ceased to operate. We are unable to see the force of the objection even in its application to the testimony of Dr. Stump. While what he said may have in-

duced the defendant to break silence, it certainly was no inducement to the defendant to confess guilt by speaking untruthfully in regard to the fact. It was because of his office as pastor that Dr. Stump sought the first interview. When he called the second time it was at the solicitation of the defendant. What occurred at this interview was in the presence of the officer who had made the arrest. Dr. Stump repeated what he had said to the defendant in the first interview, that it would be better for him to tell the truth, adding that he, the witness, could do more for him if he told the truth. Before the defendant had opportunity to express himself at all, White, the officer present, interfered with the remark, "Reverend, as a detective I wish you would not make a remark of that kind. I may be a witness against Henry, and I can offer him no promise of any kind, and I hope you don't mention that again." It was after being thus cautioned that defendant made the declarations in the presence of Dr. Stump and White which were offered to be shown. Later on the same declarations were made to others. To apply the rule which excludes confession made under the influence of threat or promise to a case like this would be stretching it to a most unreasonable limit. If what was said by Dr. Stump can be regarded as a promise calculated to induce a confession, certainly whatever influence it could have had in this direction must have been entirely neutralized or avoided by what the officer said in reply. If Dr. Stump's testimony was admissible, and we think it was, the testimony of the other witnesses as to the confessions of course stood clear of all possible objections.

The assignments fifteen and eighteen, inclusive, charge error in answers to points submitted. These points were predicated on a killing as the result of a sudden impulse or impetuous temper, and asked instructions that the guilt in such case would be less than murder in the first degree. There was nothing in the case calling for any such instructions, however correctly the law may have been expressed in the points. The defendant had denied the killing and all knowledge of it. There was no living witness, unless himself, to testify to the

circumstances under which the killing was done. Consequently there was nothing in the evidence upon which a finding that the killing was the result of sudden impulse could rest. On the other hand, such circumstantial evidence as was produced in regard to the occurrence warranted an inference that the shooting was a deliberate act, wholly consistent with the specific intent to take life. These assignments are without merit.

The ninth and tenth assignments relate to rulings of the court on offers of evidence to show that if defendant did the killing he was at the time of the commission of the act intoxicated. Lester Kauffman, a young man who had been in defendant's company during the afternoon and evening until within a very short time of the tragedy, having testified for the commonwealth was recalled by the defendant in turn, and it was proposed to ask him what the defendant's condition was with respect to sobriety when he parted from him. The purpose as stated was to show defendant's intoxicated condition to rebut presumption of deliberation and premeditation. The ruling rejecting the offer was as follows: "In the form in which the offer has been made merely to prove drunkenness, we regard it as inadmissible, and overrule the offer and seal an exception for the defendant. Drunkenness is no valid defense." The offer being renewed it was again rejected under the following ruling: "We understand this to be simply an offer to show that the defendant was under the influence of liquor and without any information in it as to what the degree of his intoxication may have been, and with no offer to show by this or any other witness that he was so much intoxicated that his mind was incapable to form a deliberate intent or premeditate a design to kill and carry it out. In the form in which the offer is made we reject it." These rulings were correct. Mere intoxication does not imply loss of power to form specific intent; and therefore the evidence here offered was irrelevant. Intoxication is a matter of degree; it may be so mild as to disturb normal mental action but slightly; again, it may be so deep that the subject is almost, if not entirely, without consciousness. Between these two extremes there are

many degrees.  The offer in this case discloses nothing as to the degree of the defendant's intoxication.  The ruling of the court was based on this fact, and the reason was so clearly stated that it cannot for an instance be supposed that the learned counsel for the defendant, who have shown such zeal in their client's cause, would not have enlarged their offer to bring it within legal requirements if the evidence had been at hand to warrant it.  As it stood it came far short, for, as we have said, mere intoxication without more is insufficient to overcome the presumption of deliberation and premeditation which arises in cases of this character.

We think the question asked of the defendant when recalled to the stand as to the amount of liquor he had drunk during the evening of the occurrence, was not objectionable, unless on the ground that it led to unnecessary repetition, and should therefore have been allowed.  But the defendant could not have been prejudiced by its disallowance.  He had already testified, as had several of his witnesses, as to the number of drinks he had taken; and he himself had testified fully as to the extent of his intoxication.  The answer to the question would therefore have elicited no fact not already appearing in evidence; but would have been merely supplemental to those already adduced and not contradicted.  The remaining assignments suggest nothing that calls for discussion.

A review of the whole record leaves us convinced that the case stands clear of error; that the defendant had a fair trial in all respects, with every right accorded him that he was entitled to and that the jury was adequately and correctly instructed as to the law governing the case.  The record exhibits nothing that calls for our interference with the result reached.

The judgment is affirmed; and it is ordered that the record be remitted to the court below that the judgment may be carried into execution according to law.