410 A.2d 826

**COMMONWEALTH of Pennsylvania,**

v.

**James E. FRAZIER, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued July 16, 1979.

Filed Sept. 14, 1979.

Petition for Allowance Denied Jan. 3, 1980.

528

530

John E. Feather, Jr., Assistant Public Defender, Lebanon, for appellant.

Thomas S. Long, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

WIEAND, Judge:

On November 9, 1973, eleven-year-old Jennifer Gross, while walking to school along her accustomed route, was abducted by appellant and taken by automobile to an isolated wooded area in Lebanon County. There appellant stabbed her in the neck several times with a piece of glass. He then set fire to a pile of refuse and placed the victim's body on or near the fire. He returned home, changed clothes and went shopping with his friends, the Raiger brothers. Firefighters, engaged in extinguishing a brush fire later that day, discovered the victim's body. Death was caused by multiple wounds and inhalation of smoke and fumes. Appellant was arrested the next day.

At his first trial, on May 20, 1974, appellant was found guilty of murder in the first degree and sentenced to life imprisonment. The Supreme Court granted appellant a new trial on the grounds that the trial court had abused its discretion in refusing appellant's motion for a change of venue because of extensive pre-trial publicity. *Commonwealth v. Frazier*, 471 Pa. 121, 369 A.2d 1224 (1977). At his second trial, which began May 2, 1977, appellant again was convicted of first degree murder and sentenced to life imprisonment. Appellant now appeals from the denial of motions for new trial and in arrest of judgment. We affirm.

After the Supreme Court had granted appellant a new trial, he again applied for a change of venue. His

---

* Justice Robert N. C. Nix, Jr. of the Supreme Court of Pennsylvania, and Judge I. Martin Wekselman of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

application was denied. Appellant argues that this was error, that he failed to receive a fair trial in Lebanon County because of prejudicial publicity. The standard to be applied in determining whether pre-trial publicity denies an accused his right to be tried by an impartial jury was articulated by the Supreme Court in deciding appellant's prior appeal. If the nature of the content of the publicity is prejudicial and a significant number of prospective jurors are exposed to such publicity, then a trial court would abuse its discretion by refusing a request for a change of venue *unless* a sufficiently long period of time had passed between the time of the publicity and the application for a change of venue for the court to conclude that any prejudice which may have been initially created by the publicity had been dissipated. *Commonwealth v. Frazier*, supra, 471 Pa. at 131–32, 369 A.2d at 1229–30. See also: *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973), *cert. denied*, 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124. Instantly, the second trial did not begin until almost three and one-half years after the killing. The trial court found that potential prejudice caused by pervasive publicity surrounding the first trial had been dissipated by the time of the second trial. The record supports this finding.

The only media references to the remand order of the Supreme Court were a local newspaper article published March 7, 1977, and an editorial comment broadcast by a local radio station on March 17, 1977. Trial did not begin until May 2, 1977, one and one-half months later. The newspaper article was a factual reporting of the Supreme Court's opinion. The radio editorial, although critical of the Court's opinion, was broadcast to a potential listening audience of no more than 6,500 people in an eight county area of more than 1,175,000 residents. Thus, the likelihood that a significant number of prospective jurors had been influenced by recent pre-trial publicity was minimal.

Furthermore, appellant questioned prospective jurors at voir dire as to their exposure to any publicity attendant to

either the first trial or the remand, and very few recalled earlier media reporting of the homicide. Those who did recall it were successfully challenged. Appellant's failure to exhaust his peremptory challenges is some evidence that an impartial jury, satisfactory to the defense, had been empanelled. See: *Commonwealth v. Hoss*, 469 Pa. 195, 203–04, 364 A.2d 1335, 1339–40 (1976); *Commonwealth v. Shadduck*, 168 Pa.Super. 376, 380, 77 A.2d 673, 675 (1951).

Appellant next asserts that the trial court erred in refusing a pre-trial application to suppress evidence obtained illegally from appellant's home, vehicle and person. Specifically, he argues that the affidavit used to obtain the issuance of search warrants failed to aver adequate facts to establish probable cause.

The Supreme Court has held that "[p]robable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Sangricco*, 475 Pa. 179, 183, 379 A.2d 1342, 1344 (1977); *Commonwealth v. Thomas*, 448 Pa. 42, 52, 292 A.2d 352, 357 (1972). Further, where the police affiant does not have personal knowledge of the facts he alleges, the warrant must set forth sufficient underlying circumstances to enable the issuing authority independently to judge not only the validity of the informer's information but the reliability of the informer as well. *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971). See also: *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The facts established by the affidavits in the instant case were sufficient to support the issuance of the search warrants. The affidavits initially recounted the circumstances surrounding the discovery of the victim's body and its identification. The victim's father related that she had left the house on November 9, 1973, at 8:00 o'clock, A. M.

and that she usually walked down Arnold Street on her way to school. A classmate of the victim placed her at Arnold Street at 8:10 that morning. Craig Shutter and Samuel Speraw told police that they witnessed a short and stocky white male wrestle with a screaming, young girl and throw her into a black Buick on Arnold Street. Shutter was able to read the car's license plate number which he related to police as 0C3181. The next day the police took these two witnesses to observe a black Buick with license plate number 03C181. Both men identified the Buick as the automobile which they had observed on the prior day and into which the girl had been forced. A friend who had known appellant for several years, Mark Kristovensky, assured police that appellant, who had been ascertained to be the registered owner of the car, fit the description of a "white male, short and stocky build." He also supplied them with appellant's address, which corresponded with the address police had obtained from motor vehicle registration files.

The information thus presented came from persons having personal knowledge of the facts communicated. Two of them were eyewitnesses to the child's abduction. Their initial mistake in the relative positions of a letter and number in the license plate did not destroy the existence of probable cause. That mistake, moreover, was obviated by their positive identification of the car itself. Each was corroborated by the other. This constituted probable cause.

■ It is not necessary that each fact standing alone provide probable cause. The existence of probable cause is determined by a consideration of the totality of the circumstances as seen through the eyes of a trained police officer, not the average citizen. *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 341 A.2d 198 (1975); *Commonwealth v. Young*, 222 Pa.Super. 355, 294 A.2d 785 (1972). The facts recited in the affidavits certainly are sufficient to justify the issuance of the search warrants under this standard.

■ Appellant argues that even if the affidavits contained a sufficient factual recitation, the affidavits did not establish the reliability of the persons giving information. The informants in the instant case were not paid, unknown

tipsters but identified eyewitnesses to a crime who voluntarily reported their observations to the police. The trustworthiness of such persons is assumed. *Commonwealth v. Stokes*, 480 Pa. 38, 44, 389 A.2d 74, 77 (1978); *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971); *Commonwealth v. Whitehouse*, 222 Pa.Super. 127, 292 A.2d 469 (1972); *Commonwealth v. Crawley*, 209 Pa.Super. 70, 223 A.2d 885 (1966). See also: *United States v. Rollins*, 522 F.2d 160 (2nd Cir. 1975); *United States v. Burke*, 517 F.2d 377 (2nd Cir. 1975); *United States v. Simmons*, 444 F.Supp. 500 (E.D.Pa.1978); Lafave, Search and Seizure, § 3.4 (1978).

█ Moreover, the reliability of hearsay information may be established by corroboration. *Commonwealth v. Hunt*, 256 Pa.Super. 140, 143, 389 A.2d 640, 642 (1978); *Commonwealth v. Whitehouse*, supra. Each person's information was corroborated by information gathered by police from other sources and their own independent investigation. Therefore, the search warrants were valid in all respects and properly issued.

█ Police began looking for appellant on the evening of November 10, 1973. They found him at the home of his friend, Robert Raiger, who, coincidentally, was employed as a guard at the Lebanon County Prison. Appellant was escorted across the street to his own house, seated at the kitchen table, given his *Miranda* warnings, and read the search warrants. Present in the kitchen with appellant were three police officers and Robert Raiger; other officers searched the house and the yard. After being asked whether he wished to answer questions, appellant asked Mr. Raiger for advice. Raiger told him to tell the truth and cooperate. Appellant initially professed his innocence. A few minutes later, a police officer entered the room holding a pair of trousers containing dark red stains. When the officer commented that the spots appeared to be blood stains, appellant made incriminating statements. Later tests proved the officer's statement correct. The trousers were admitted into evidence at trial.

Appellant contends that the number of police present at his home, alleged trickery concerning the production of the

trousers, leading questions, and the presence of his friend rendered his statements involuntary. We disagree. "[T]he ultimate test of voluntariness is whether the confession is the product of an essentially free and unconstrained choice by its maker." *Commonwealth v. Hallowell*, 444 Pa. 221, 282 A.2d 327 (1971). Viewing the totality of the circumstances, as we must, *Commonwealth v. Graham*, 408 Pa. 155, 182 A.2d 727 (1962), we find no indication that the police coerced or tricked appellant into making a statement. Appellant was questioned in his own home for only forty-five minutes before he made the inculpatory statement. The presence of Mr. Raiger and his advice to appellant to cooperate similarly evidences no chicanery or coercion. Confessions made at the instance of a clergyman who advises that cooperation is the better path have been held admissible. See: *Commonwealth v. Graham*, supra; *Commonwealth v. Snyder*, 224 Pa. 526, 73 A. 910 (1909).

 Appellant's next assignment of error is that a mistrial should have been granted because of prejudicial statements made by two prospective jurors during voir dire. In response to the Court's questions as to whether there was any impediment which would prevent a juror from being fair and impartial, two jurors, in the presence of the other jurors, said that they had formed an opinion that appellant was guilty. One of these jurors, Mrs. Evitts, said that she had made up her mind at the time of the first trial. This, appellant contends, created an aura of prejudice about the trial which added to the prejudice caused by pre-trial publicity. The mere expression of a prospective juror's personal opinion was not itself so prejudicial as to require the granting of a mistrial. See: *Commonwealth v. Lee*, 261 Pa.Super. 48, 395 A.2d 935 (1978). As noted above, all jurors were questioned thoroughly at voir dire as to any bias or fixed opinions that would compel their disqualification. Similarly, the jurors knew that the alleged homicide had occurred 3½ years earlier, and the reference to a prior trial, without disclosing the results thereof, was innocuous. Compare: *Henderson v. State*, 163 Tex.Cr. 573, 295 S.W.2d 215 (1956);

58 A.L.R.2d 556 § 10. Not every unwise or irrelevant remark made in the presence of the jury compels a new trial. The comment must be of such a nature or made in such a manner as to deprive the defendant of a fair and impartial trial. *Commonwealth v. Whitman*, 252 Pa.Super. 66, 380 A.2d 1284 (1977). Because the record evinces no prejudice attributable to these isolated remarks made at voir dire, the trial court did not abuse its discretion by refusing appellant's motion for a new trial. See: *Commonwealth v. Schwartz*, 178 Pa.Super. 434, 115 A.2d 826 (1955).

 Finally, appellant contends that the testimony of his friends, the Raiger brothers, concerning conversations had with appellant after the murder but before his arrest was irrelevant. Evidence is relevant if it tends to establish a material fact or tends to make facts at issue more or less probable. *Commonwealth v. Chism*, 480 Pa. 233, 389 A.2d 1041 (1978); *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973). The trial court found that these conversations were relevant because they enhanced the probability that appellant committed the crime. Our review of the record confirms the relevancy of these conversations. Therefore, we find no error in the trial court's ruling.

Judgment of sentence affirmed.