## Commonwealth v. Harrison

C.P. of Adams County, no. CR-1029-2005.

*Shawn Wagner* and *Sarah Castillo,* for Commonwealth.
*Patrick Quinn,* for defendant.

KUHN, *P.J.,* December 5, 2006—Before the court is a pretrial motion filed by defendant on February 13, 2006 wherein he seeks suppression of all evidence seized from his residence on September 8, 2005.[1] For reasons set forth below, the motion is granted.

## BACKGROUND

On September 8, 2005, Trooper Gregg Dietz of the Pennsylvania State Police applied for and obtained a search warrant from Magisterial District Judge John Zepp

---

1. After several continuances, the matter was submitted to the court on May 26, 2006 and briefs were filed by July 11, 2006. By opinion dated August 7, 2006, the motion was denied. The Commonwealth filed a motion for reconsideration on August 18, 2006 which resulted in an order vacating the court's earlier opinion The parties were given the opportunity to file supplemental briefs.

for defendant's residence located at 6300 Oxford Road, Huntington Township, Adams County, Pennsylvania. Attached to the application was Trooper Dietz' affidavit of probable cause, which provides:

"Your affiant is a Pennsylvania State Trooper assigned to the criminal investigation unit at PSP-Gettysburg. I have been employed as a trooper since January 2, 1994. In the course of my duties as a trooper, I have investigated numerous offenses listed under the Pa. Crimes Code title 18 along with other offenses listed under title 75 and Act 64 of 1972. In addition to my investigative duties, I have attended numerous classes and seminars specifically related to my current assignment. I have been the affiant and lead investigator where I have executed search warrants and have successfully prosecuted numerous subjects for a wide variety of crimes against both person and property.

"On September 6, 2005, this officer was contacted by Adams County Children and Youth Caseworker Kim Walker in reference to a report referred to her by Carroll County Children and Youth. The complainant in this incident is the ex-girlfriend of Harrison's [sic] and the mother of his two children. She is currently living in a shelter for abused women as a result of altercations with Harrison in the past. They have a custody agreement where he has custody of the children 1, 2, 4th weekends of the month. The children have been with Harrison the past two weekends.

"In the course of there [sic] relationship, Harrison has made numerous statements to the complainant about his sexual fantasies involving their daughter (2 yoa). He has also told the complainant that there were two different incidents while the couple still lived together (7/03-8/05)

where he has assaulted the child. He told the compl. that on one incident he masterbated [sic] and wiped the semen onto his daughter [sic] lips and she licked it. The second incident Harrison described to her was he again masterbated [sic] and put the semen onto a spoon and fed it to the daughter.

"Beginning with Sunday August 28, 2005 when the children were returned to the complainant on Sunday August 28, 2005, she recalls smelling an odor which she felt was not normal and smelled like seminal fluid. She proceeded to give the child a bath and as she was bathing him, the compl. reports he called her and said that she should make sure she washes her hair because he left a present there for her and that he ejaculated on her face before he gave the kids back.

"Since that time, Harrison has called the compl. numerous times on the phone talking about comleting [sic] explicit sexual acts on his daughter and other fantasies he has had. On Monday August 29, 2005, he called her and was asking her if it was possible to have intercourse with her and was describing how he had to get his penis wet to do it. He then asked her if it was possible to have oral sex with her and the compl [sic] repeatedly told him that was not going to happen.

"On Wednesday he called the compl. again and was describing what he wanted to do when he picked the children up on Friday, September 9, 2005. He stated he was going to video him and the compl [sic] having sex in the back of the truck and would start by having oral sex on his son.

"On Sunday September 4, 2005, the compl. spoke with Harrison on the phone while he had custody of the children. He related that he was on the computer looking at

child porn and talking about purchasing a bumper sticker on line that says "I like my dad's cum" and senidng [sic] it to the compl. He has also printed out pictures of what she described as very young undeveloped girls from his computer. She has stated that he is constantly on the computer and readily talks about viewing child pornography on line. She stated that as of the end of August 2005, she still observed the computer at the residence.

"Based on the above information and my experience as a Pennsylvania State Trooper, I request that a search warrant be issued based on the facts set forth in this probable cauue [sic] affidavit. It is my experience that subjects involved in the viewing of child pornography, ofter [sic] keep pictures, images, and tapes/videos of such that would be present on the subjects [sic] computer or present in his personal possessions. It is my belief based on the above mentioned interview that Harrison does possess a computer at the above residence and, is in possession or has stored or downloaded onto his hard drive, pictures, images, or photographs of child pornography that could be used, if found to be in his possession, evidence of the aforementioned crimes on page on [sic] of this search warrant."

On the same day the warrant was issued, Trooper Dietz and Pennsylvania State Police Troopers Nicholas Bloschichak and Luigi Dirienzo served it on defendant at his residence. As a result of the execution of the search warrant, the troopers seized two computer towers, two 8 mm cassette tapes, two VHS tapes, and 10 Polaroid photographs of defendant posing nude. A subsequent search of one of the computer towers by a Pennsylvania State Police employed computer crime analyst revealed 77

images depicting minors engaging in prohibited sexual acts. Defendant was charged with 77 counts of possession of child pornography, one count of indecent assault, and one count of corruption of minors.

## DISCUSSION

Defendant contends than the affidavit used to support the issuance of the warrant was deficient because (a) it lacked probable cause, (b) it was based on stale information, and (c) the scope of the search was overbroad. Because of the disposition entered on the probable cause issue, the other issues raised by defendant need not be addressed.

Where a motion to suppress has been filed, the burden is placed on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Ruey,* 586 Pa. 230, 240, 892 A.2d 802, 807 (2006); *Commonwealth v. Hernandez,* 892 A.2d 11, 13 (Pa. Super. 2005). Thus, in this case, the Commonwealth has the burden of proving that the affidavit upon which the search warrant was issued was supported by sufficient probable cause.

All persons have a right under both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution to be free from unreasonable searches and seizures. Except for a few established exceptions, searches are considered unreasonable unless conducted pursuant to a warrant, supported by probable cause, and authorized by a neutral and detached magistrate. The standard for determining whether probable cause exists for the issuance of a search warrant was enunciated in *Commonwealth v. Dean,* 693 A.2d 1360, 1365 (Pa. Super. 1997) as follows,

"Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating . . . a search warrant is the 'totality of the circumstances' test as set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed 2d 527 (1983), and adopted in *Commonwealth v. Gray,* 509 Pa. 476, 484, 503 A.2d 921, 926 (1985). A magistrate is to make a 'practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis [for] knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' . . . The information offered to establish probable cause must be viewed in a commonsense, non-technical manner. . . . Probable cause is based on a finding of probability, not a prima facie showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause." (citations omitted) (footnote omitted)

Probable cause for a search warrant exists where the facts and circumstances within the knowledge of a police officer are reasonably trustworthy and sufficient to warrant a person of reasonable caution in the belief that an offense has been committed. *Commonwealth v. Gelineau,* 696 A.2d 188, 192 (Pa. Super. 1997).

A court which is required to review the issuance of a search warrant has a similar, but slightly different task than the magistrate:

"[T]he totality of the circumstances test 'permits a balanced assessment of the relative weight of all the various indicia of reliability (and unreliability) attending

to the informant's tip . . . .' It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. . . . In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination and must view the information offered to establish probable cause in a commonsense, non-technical manner." *Commonwealth v. Torres,* 564 Pa. 86, 96-97, 764 A.2d 532, 537-38 (2001). (citations omitted)

Moreover, the court may only consider evidence within the four corners of the supporting affidavit when determining whether a warrant is supported by probable cause. *Commonwealth v. Sharp,* 453 Pa. Super. 349, 357, 683 A.2d 1219, 1223 (1996).

In this case, information was provided to Trooper Dietz through a multi-layered referral. It is alleged that defendant's ex-girlfriend reported information to Carroll County Department of Social Services (CCDSS). That agency allegedly referred the same information to Kim Walker of Adams County Children and Youth Services (ACCYS). Ms. Walker, in turn, then contacted the trooper-affiant. Defendant has challenged the reliability of the multiple layers of hearsay information used to support the affidavit of probable cause.

An affidavit of probable cause does not have to reflect the personal observations of the affiant. *Commonwealth v. Greco,* 465 Pa. 400, 405, 350 A.2d 826, 828 (1976). Information received from informants may form the basis of a probable cause determination. *Commonwealth v. Luv,* 557 Pa. 570, 576, 735 A.2d 87, 90 (1999). When a probable cause determination is based on information from an informant, the court must examine the infor-

mant's veracity, reliability, and basis of knowledge. *In Interest of O.A.,* 552 Pa. 666, 676, 717 A.2d 490, 495 (1998). Reliability should be established by some objective facts that enable the court to conclude that an informant is reliable. Similarly, an affidavit containing double hearsay need not be categorically rejected and "must be evaluated in conjunction with the other information in the affidavit to determine whether the information is reliable." *Commonwealth v. Singleton,* 412 Pa. Super 550, 554, 603 A.2d 1072, 1074 (1992). When an affidavit is based on hearsay, it must contain "(1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was and, (2) reasons why the affiant believed the informant was reliable." *Greco,* 465 Pa. at 405, 350 A.2d at 829. The reliability of hearsay within an affidavit may be established by corroboration. *Commonwealth v. Frazier,* 269 Pa. Super. 527, 535, 410 A.2d 826, 830 (1979). Furthermore, if an informant's tip provides information demonstrating a special familiarity with the defendant's affairs, corroboration of this information imparts additional reliability to the tip and supports a finding of probable cause. *Commonwealth v. Whitters,* 805 A.2d 602, 606 (Pa. Super. 2002).

I have determined to first examine the information provided by defendant's ex-girlfriend. If that information, in and of itself, is insufficient to establish probable cause for the issuance of a search warrant, then I need not determine whether that information continues to be sufficient when passed to the affiant through multiple sources.

The Commonwealth argues that the affidavit contained sufficient probable cause for a search warrant to issue

because the ex-girlfriend has a special familiarity with defendant and his residence. Therefore, her statement that defendant has viewed child pornography on his home computer and her observations of printed child pornographic images in his residence is sufficient to establish her reliability and probable cause. The Commonwealth goes so far as to suggest that these facts create not a mere suspicion, but a substantial likelihood, that child pornographic images would be found on defendant's computer. Defendant counters that the affidavit lacks the requisite corroboration to make the ex-girlfriend's information reliable.

The issue before the court may be stated as follows: where an ex-girlfriend reports that (1) she lived with defendant from July 2003 through August 2005; (2) she is the mother of his two children; (3) she is living in a shelter for abused women as a result of altercations with defendant; (4) the parties have a custody agreement whereby defendant has custody of the children three weekends per month; (5) she claims that during their relationship defendant has made statements of having sexual fantasies about the children and of having engaged in sexual conduct with his daughter; (6) defendant readily talks about viewing child pornography on his computer; and (7) the computer was in defendant's residence as of the end of August 2005, is there sufficient probable cause to issue a search warrant to seize defendant's computer and "any other items related to this crime." There is scant Pennsylvania authority speaking directly to this issue. However, this court is guided by one Pennsylvania trial court decision and several out-of-state decisions.

In *Commonwealth v. Kirkpatrick,* 76 D.&C.4th 49, 50 (Monroe Cty. 2005), an individual, residing at the same

address as the defendant, opened a file[2] located on a shared computer network. When the file was opened, it contained file names entitled "8-year-old boys," "10-year-old girls," "kindergarten kids," and "dad with daughters." *Id.* After investigating officers executed a search warrant[3] at the defendant's residence and seized two hard drives from his computer, a forensic analysis of the hard drives revealed several images indicating child pornography. *Id.* at 50-51. The defendant filed a motion to suppress, arguing that the affidavit of probable cause lacked probable cause because it merely alleged that the defendant had a computer with these file names and that they, in and of themselves do not suggest a violation of 18 Pa.C.S. §6312(d)(1).[4] *Id.* at 57.

2. Through the network, the file was linked back to the defendant's computer.

3. The affidavit of probable cause read:

"That on March 16, 2005 this Affiant who is employed by the Stroud Area Regional Police Department received a [sic] information from Gabriela Renda regarding possible child pornography. She stated that she was having problems with her computer that is located in her bedroom at her residence of 756 Main St. She stated that while she was trying to figure the problem out, she opened a file that is located in a shared Network File. This network is shared via a router and is connected to a computer that [sic] owned by Christopher Kirkpatrick who lives in another bedroom at the same address. This is a LAN (Local Area Network) service that is subscribed from Blue Ridge Cable. This subscription is subscribed to Renda and she also pays for this service. When she opened this file, it had files in to [sic] that she thought was [sic] suspicious. She saw several files that were named (8-year-old boys), (10-year-old girls), (kindergarten kids), and one named [Qdad with daughtersQ]." *Id.* at 56.

4. 18 Pa.C.S. §6312(d)(1), Possession of child pornography, states: "Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense."

The Monroe County Court of Common Pleas found that the affidavit was frustratingly sparse because it merely set "forth the titles of four computer files without providing any clear indication as to what those files contained or to whom they belonged." *Id*. at 62-63. Consequently, the court held that based on a four corners analysis, the titles of the four files, in themselves, were not sufficient to indicate child pornography and substantiate a finding of probable cause. *Id.* at 63.

The defendant also contended that there was insufficient proof of the veracity of the informant (Ms. Renda) to support the issuance of a valid warrant. *Id.* After examining the affidavit, the court found that Ms. Renda's credibility was not suitably established. *Id.* Although the affidavit described how and why she came into contact with the file names, it failed to include any information that would tend to demonstrate her veracity or reliability in that regard. *Id.* Additionally, the court found that there was "no language in the affidavit to demonstrate that the affiant was able or attempted to corroborate the information he received." *Id.* at 65. Therefore, the court held that the search warrant was not properly granted by the magistrate. *Id.*

Similarly, in the instant case the affidavit sets forth how and why the ex-girlfriend obtained the information she reported, but it completely lacks any information that would tend to support her veracity. In fact, unlike the

---

The defendant further argued that in order for the affidavit to satisfy 18 Pa.C.S. §6312(d)(1), "it would have had to include at a minimum, a statement that . . . the informant had viewed the computer files and actually saw images that depicted acts that are prohibited under section 6312(a) as well as sufficient facts to demonstrate her reliability as an informant."

informant in Kirkpatrick, here there is a reason to suggest that she might not be credible. Here, the ex-girlfriend, along with her children, lived with defendant apparently during a time when he might have been viewing child pornography and, purportedly, told her of his fantasies and conduct with his daughter. However, there is no indication that she reported this conduct to any authorities. Only after being physically abused and forced to reside in a shelter did she first report her information. Even then, the information was reported to a child welfare agency in Maryland and not to the police. Despite her purported knowledge of defendant's propensity toward child pornography and of his sexual fantasies, she allegedly entered into an agreement for defendant to have custody of the children three weekends per month. After what may have been the second or third (but certainly no later than the fifth) such weekend, she reported her concerns to the agency. Any reasonable person examining similar allegations should proceed cautiously and seek some assurance that these allegations are not being advanced to gain advantage in a custody dispute. As in *Kirkpatrick,* the lack of corroboration of any of the ex-girlfriend's allegations makes her statements constitutionally unreliable.

The Commonwealth has cited *State v. Wible,* 51 P.3d 830 (Wash. Ct. App. 2002) in support of its position. There, while working on the defendant's computer, two repairmen came across several files which they believed to be child pornography and images from two video files which were sexual in nature and depicted young girls. *Id.* at 833. The repairmen reported their observations to police who obtained a search warrant. *Id.* Wible filed a motion to suppress challenging the reliability of the in-

formants. *Id.* The court noted the following: "affidavits relying on information from citizen informants must (1) set forth the underlying factual circumstances from which the informant makes his conclusions so that a magistrate can independently determine the reliability of the manner in which the informant acquired his information and (2) set forth facts from which the officer can conclude the informant is credible and his information is reliable." *Id.*

The court found that the affidavit contained facts sufficient to satisfy the basis of knowledge prong based on the informants' personal observations of the computer images. *Id.* at 834. Additionally, the file names[5] supported the report that the images depicted minors and were sexual in nature. *Id.* Furthermore, the court concluded that the affidavit satisfied the reliability prong because named citizen informants are presumed reliable.[6] *Id.* at 835. Wible's motion to suppress was denied. *Id.* at 837.

At first glance, this case seems to support the Commonwealth's position that there was a substantial basis to support the magistrate's finding of probable cause.

---

5. The file names were "11-year-old," "8-year-old Rape," and "8-year-old Smile."

6. Under Washington law, "when the informant is an ordinary citizen . . . and his identity is revealed to the issuing magistrate, intrinsic indicia of the informant's reliability may be found in his detailed description of the underlying circumstances of the crime observed or about which he had knowledge. If the underlying circumstances are sufficiently detailed to satisfy the first prong of *Aguillar-Spinelli,* they may themselves provide built-in credibility guides to the informant's reliability, thus fulfilling the second prong as well. The detailed information encompassed in the affidavit's internal content attests to the informant's reliability by its very specificity; no independent corroboration is required. *Id.* at 835.

However, in *Wible* the reporting citizens, unlike the ex-girlfriend here, appear to be disinterested persons. Furthermore, they had actual possession of the computer and gave the police specific descriptions of what they observed. Other than reporting that defendant printed pictures of very young girls at some unknown time, the ex-girlfriend's information was based solely on what she was told. In other words, the details she described and her motives for reporting the offense were more suspect than in *Wible* and required more corroboration.

The Commonwealth has also cited *Elardo v. State,* 163 S.W.3d 760 (Tex. Ct. App. 2005) apparently for the purpose of arguing that information is presumed reliable when it is provided by a private citizen whose only contact with the police was to witness a crime. The Commonwealth contends that the ex-girlfriend is a private citizen who witnessed a crime and therefore her information should be deemed reliable.

In *Elardo,* the defendant's daughter-in-law went to the defendant's home to retrieve a television and observed him viewing child pornography on his computer. The daughter-in-law reported this observation to the police who, in turn obtained a search warrant.[7] During the search, the police seized images of child pornography.

---

7. The search warrant was based on the following affidavit of probable cause in relevant part: "A reliable source provided affiant with information that he/she has been in the residence described above within the last 12 hours and has seen the visual material on a computer in the above described residence. The reliable source also witnessed the party named above, viewing the visual material at that time. The reliable source advised that he/she has known the above party for a number of years and has been told on several occasions that the party above keeps this type of visual material in the residence." *Id.* at 766.

The defendant's suppression motion was denied by the trial court. On appeal, the Texas Court of Appeals reversed, finding that "[w]hile the affidavit in support of the warrant did contain facts indicating that the information may have been obtained in a reliable manner by the informant, the warrant did not contain any facts concerning why the information was reliable or any other indicia or [sic] reliability. Under the totality of the circumstances, the affidavit was not sufficient to constitute a substantial basis for determining that probable cause existed." *Id.* at 763-64.

I do not find *Elardo* to be beneficial to the Commonwealth.

Texas, like Pennsylvania, follows *Illinois v. Gates.* The *Elardo* court noted that *Gates* did not dispense with the two-pronged test developed in *Aguilar-Spinelli*[8] but rather held that it should not be applied too rigorously. *Elardo,* 163 S.W.3d at 766. Instead, the totality of the circumstances test is followed which, by necessity, includes an examination of the veracity, reliability, and basis of knowledge, *i.e.,* the personal observation of the informant. *Id.* at 767. The strong nature of the basis of knowledge factor, however, is not sufficient to compensate for a complete lack of the veracity or reliability factors. *Id.* A deficiency in one of these factors, however, may be compensated for by a strong showing as to the other factors. *Id.*

---

8. Because of the potential unreliability of statements given by anonymous informants, the United States Supreme Court developed the *Aguilar-Spinelli* analysis which required a two-prong test: (1) the informants obtained the relevant information in a reliable manner and (2) the informant was reliable. See *Aguilar v. Texas,* 378 U.S. 108 (1964) and *Spinelli v. United States,* 393 U.S. 410 (1969).

*Elardo* noted some courts have held that information provided by private citizens whose only contact with the police was to witness the crime is presumed to be reliable. *Id.* at 768-69. This concept developed because the Supreme Court in *Gates*, 462 U.S. at 233-34 suggested that "if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary."[9] Whether a court views that circumstance as a presumption of reliability or a reason to lessen the scrutiny applied to the basis of knowledge factor, it would be incredulous to argue that simply alleging that an informant witnessed a crime, without more, is constitutionally sufficient for the issuance of a search warrant. A magistrate should not merely ratify the bare conclusions of others. The extent of the knowledge and the circumstances under which that knowledge was obtained must also be examined. Reduced scrutiny is not equivalent to blind adherence. The magistrate is bound to view the totality of the circumstances not just the conclusions drawn by the police.

---

9. In *Elardo,* the state argued that the magistrate had a substantial basis to determine there was probable cause because the source of the information was a private citizen whose only contact with the police was to witness the crime. *Id.* at 768. The court noted that "[i]f the affidavit had alleged that the reliable source was reliable because she was a private citizen whose only contact with the police was to witness the crime, the state's argument may be correct." *Id.* at 769. Nevertheless, "the state's argument fails . . . because the affidavit failed to mention that the reliable source was a private citizen whose only contact with the police was to witness the crime." *Id.* Likewise, in the instant case similar averments were not present. I am not suggesting that deficiency is critical. Instead, it is but one arrow in the quiver which must be included under the totality of the circumstances analysis.

Unfortunately for the Commonwealth, a common-sense reading of the four corners of the affidavit does not lead one to the conclusion that the ex-girlfriend is an "unquestionably" honest private citizen who is merely reporting a crime she witnessed. Instead, for the reasons set forth above, her integrity must be scrutinized, rather than presumed, by a neutral and detached magistrate.[10]

The importance of police corroboration of information supplied by an informant was recently illustrated in *U.S. v. Solomon*, 432 F.3d 824 (8th Cir. 2005). There, Solomon's housemate (Tradup) reported to police she had learned that the defendant was a registered sex offender and, out of concern, she searched his bedroom for information regarding his sex offense. *Id.* at 826. She found what she believed to be images of child pornography. *Id.* She also discovered a child's bathing suit under Solomon's pillow and a girl's clothing slip inside his dresser drawer even though he did not have children. *Id.* The police met with Tradup and she turned over nine images of alleged child pornography she claimed she had taken from the defendant's bedroom. *Id.* Police also verified that Solomon was a sex offender and that his name appeared on a sign in front of the house address provided by Tradup. *Id.* Based on this information, the police obtained a search warrant and recovered a computer hard drive. *Id.* Evidence discovered resulted in the defendant

---

10. Unlike the affidavit in *Elardo* which simply stated that a "reliable source" [the daughter-in-law] observed Elardo in the act of viewing computer images in his home within the past 12 hours, the affidavit in this case describes a history which provides the ex-girlfriend with a motive to fabricate. Again, the court is not suggesting that she did fabricate any portion of her report. The issue is not whether she was or was not truthful but rather what information was available from which a magistrate could conclude that her information was reliable.

being charged under federal law with possession of child pornography. *Id.*

Solomon moved to suppress the evidence obtained during the search on the basis that the warrant was not supported by probable cause. *Id.* at 827. The motion was denied. *Id.* The Eighth Circuit noted that when an affidavit is based on information from an informant, that person's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provides sufficient probable cause to support the issuance of a warrant. *Id.* The court had no difficulty concluding that probable cause existed. *Id.* First, the informant had an exceptionally strong basis of knowledge that the evidence would be found in the defendant's home because she lived there and personally discovered the child pornography and other suspicious items. *Id.* Second, the fact that Tradup met with the police allowed them the opportunity to assess her credibility. *Id.* Third, she supported her allegations by supplying the police with photos she indicated had been retrieved from Solomon's bedroom. *Id.* at 828. Fourth, the police were able to corroborate other information such as Solomon's criminal record and his address. *Id.*

In the instant matter, an examination of the ex-girlfriend's basis of knowledge, veracity and reliability within the four corners of the affidavit reveals serious concerns. Here, the informant had a somewhat limited (rather than strong) basis of knowledge that child pornography would be found in defendant's home. She reported that she had lived with defendant over several years, defendant was constantly on his computer, he still had the computer in his residence as of the end of August 2005 at some (unknown) time in the past "he has also

printed out pictures of what she described as very young undeveloped girls from his computer," and he verbally told her that he had recently been viewing child pornography.[11] However, the ex-girlfriend did not personally meet with the trooper[12] nor did she provide him with any prints or other evidence which might provide some veracity to her allegations. Furthermore, the affidavit does not even allege that the trooper verified through any other source that defendant resided at the address to be searched. In other words, here, unlike Solomon, there was no information set forth in the affidavit from which the informant's veracity or reliability could be determined. Therefore, in this case, the mere assertion that she was a private citizen reporting an alleged crime is not sufficient to establish probable cause.

Under the totality of the circumstances analysis, her limited knowledge, in my opinion, is inadequate to compensate for the complete lack of information supporting her veracity and/or reliability. Therefore, I find that there was not a substantial basis upon which the issuing magistrate could determine the existence of probable cause.

---

11. There may be some question whether simply viewing child pornography on a computer is a crime in light of the recent decision in *Commonwealth v. Diodoro,* 2006 Pa. Super. 308, 313-14 (Pa. Super. 2006) wherein the Superior Court held that "absent . . . evidence that the defendant knowingly downloaded or saved pornographic images to his hard drive or knew that the web browser cached the images," the defendant could not be found criminally liable for possession of child pornography.

12. The Commonwealth argues that the ex-girlfriend did, in fact, meet with the trooper before he applied for the search warrant. However, this information is referenced in a Pennsylvania State Police Incident Report dated November 4, 2005. Nowhere in the affidavit is it alleged that such a meeting occurred. Therefore, the court is unable to consider that meeting.

Accordingly, I am compelled to conclude that defendant's omnibus pretrial motion must be granted.[13]

---

13. I am mindful of the old adage that bad facts make bad law. There is no question that the police found material at defendant's home which would meet the definition of child pornography. This court certainly does not condone the exploitation of children for this type of depraved behavior. Furthermore, any normal person would be outraged and disgusted if the balance of the ex-girlfriend's allegations were true. Nevertheless, in a society based on law, courts cannot afford to allow the results to justify the means.