378 A.2d 897

**COMMONWEALTH of Pennsylvania**

v.

**Robert Lee MANGELLO, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1976.

Decided Oct. 6, 1977.

Thomas P. Ruane, Jr., Assistant Public Defender, Uniontown, for appellant.

Conrad B. Capuzzi, District Attorney, Uniontown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This appeal arises from appellant's conviction by a jury of raping and indecently assaulting a five year-old girl. The only issue which appellant raises here which he preserved by written post-trial motions is the question whether the victim, since she was an infant, was competent to testify.[1]

In general, the competency of a witness to testify is presumed and the burden falls on the party objecting to demonstrate the witness' incompetence. *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307 (1959). However, when a child

---

1. Appellant also maintains that the prosecution employed an unduly suggestive tactic in obtaining an in-court identification of appellant, and that the court erred in allowing hearsay into evidence at trial. However, appellant did not include these allegations of error in his written post-trial motions; therefore, they are waived. Pa.R.Crim.P., Rule 1123. *Commonwealth v. Drummond*, 238 Pa.Super. 311, 357 A.2d 600 (1976).

under the age of fourteen is called to testify, the presumption does not operate, and the competency of the infant-witness must be independently established. *Id.* See also II Wigmore on Evidence § 508 (3rd ed.1940). In establishing competency the court should inquire into three areas of testimonial capacity: capacity to observe the acts about which the infant is to testify; capacity to recollect what was observed; and, capacity to communicate what was observed, that is, the capacity to understand questions and frame intelligent answers, and the capacity to appreciate the moral responsibility to be truthful. II Wigmore on Evidence § 506 (3rd ed.1940). On this point the Court in *Rosche v. McCoy*, 397 Pa. at 620–21, 156 A.2d at 310, spoke as follows:

> "There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth."

Appellant concedes, as we think he must, given the nature of the attack on the little girl, that her capacity to observe and recollect the act is not assailable. Furthermore, appellant does directly challenge the little girl's ability to understand questions and frame answers.[2] The gist of appellant's argument is that the colloquy does not adequately demonstrate this six year-old girl's appreciation of the moral responsibility to be truthful, or, as the Court described it in *Rosche*, her consciousness of the duty to speak the truth. We disagree.

Our standard of review of rulings on the competency of witnesses is very limited indeed. As one Pennsylvania commentator has stated it, such rulings by trial judges will not be reversed except for a "flagrant abuse of discretion." 2 Henry, Pennsylvania Evidence § 790 (1953). Professor Wigmore goes further still in suggesting that appellate courts should virtually never disturb such rulings; it is

---

2. At the time of trial the victim was six years old and about to enter the first grade.

preferable, he argues, to accept the testimony for what it is worth and leave the matter of credibility to the fact-finder. IV Wigmore on Evidence § 1821 (Rev.ed.1976). See also ALI, Model Code of Evidence, Rule 101 & p. 340 (1942). The limit of our review can best be seen in *Commonwealth v. Allabaugh,* 162 Pa.Super. 490, 58 A.2d 184 (1948) where, despite allowing that the colloquy "was not wholly satisfactory," this court concluded that the breadth of the trial judge's discretion precluded reversal of his ruling permitting a five year-old to testify. Given this limited standard of review which defers to the trial judge's ability to observe the demeanor, alertness, thoughtfulness and sincerity of the infant witness, we find ample support in the colloquy for the court's ruling in the instant case.

Excerpted from the colloquy with the little girl, conducted by both the district attorney and the trial judge, are the following questions and answers:

"Q. How old are you Mary Ann?

A. Six.

Q. Where do you live?

A. In New Geneva.

Q. Do you go to school, Mary Ann?

A. Yeah.

Q. Where do you go to school?

A. At Gallatin School.

Q. Do you know the difference between telling the truth and telling a lie?

A. Yeah.

Q. What happens to people that tell lies?

A. They'll go to the jail.

Q. They'll go to jail? If we ask you questions are you going to tell us the truth?

A. Yeah.

Q. And you know what the difference is between telling the truth and telling a lie?

(No audible response)

Q. You have to answer. Don't shake your head.

A. Yes.

Q. Do you know what it means to tell the truth, Mary Ann?

A. (No response)

Q. Do you know what it means to tell the truth or to tell a lie?

A. Yes.

Q. What's it mean to tell the truth?

A. (No response)

Q. What are you supposed to do? Are you supposed to tell the truth, or are you supposed to tell lies and fib?

A. You're supposed to tell the truth.

Q. Do you ever lie?

A. (No response)

Q. Did you ever fib a little bit?

A. (Witness nods head affirmatively)

Q. Once in a while?

A. Yeah.

Q. Are you going to tell us the truth today?

A. Yeah.

Q. Do you go to church, Mary Ann?

A. Yes, we all [her family] go sometimes.

Q. You said if you tell a lie you go to jail. What else happens to you?

A. (No response)

Q. Who wouldn't like it if you told a lie?

A. If I told a lie?

Q. Yes.

A. God—he won't like me.

Q. Do you know who God is? Do you study about God? Are you told about God?

A. I'm told about God.

Q. You say if you lied God wouldn't like that?

A. He wouldn't like it, huh uh. Mommie said if I lie, God will cry. God will be up there crying.

Q. Do you know when you stood down here and put up your hand that you were promising God that you would tell the truth? Do you know that?

A. Yeah.

Q. Is that what you're going to do?

A. I'm going to tell the truth."

We find that the colloquy demonstrates the little girl's understanding of her moral responsibility to tell the truth ("God won't like it; God will cry.") and her knowledge that punishment will ensue false swearing ("[People who tell lies] will go to jail."). See 3 Jones on Evidence §§ 20:10–11 (6th ed.1972).

■ Appellant contends, however, that the colloquy in the instant case reveals less appreciation for the obligation to be truthful than did the colloquy in *Commonwealth v. Rimmel*, 221 Pa.Super. 84, 289 A.2d 116 (1972), where we granted a new trial based upon our finding the colloquy conducted of two girls, aged seven and eight, to be inadequate to establish competency. We disagree. First, in *Rimmel*, the girls' responses to questions concerning the duty of truthfulness indicated only that if they lied they would be "hollered at" or "beaten." No questions tended to establish any further conception of the moral responsibility to be truthful as did the colloquy in the instant case. In any event, were we to find *Rimmel* controlling in the instant case, we would be expanding it to a degree that would clearly contradict the trend in Pennsylvania and other jurisdictions. See, e. g., *Commonwealth v. Fox*, 445 Pa. 76, 282 A.2d 341 (1971) (eight year-old competent to testify at murder trial); *Commonwealth v. Ault*, 228 Pa.Super. 353, 323 A.2d 33 (1974) (eight year-old competent to testify to solicitation to commit sodomy and corrupting); *Commonwealth v. Allabaugh*, supra (five year-old competent to testify at sodomy trial). Numerous other cases of similar import are collected in 3 Jones on Evidence § 20:10 at p. 608, n. 80 (6th ed.1972). For that matter *Rimmel* itself has been criticized despite its peculiar facts. Note, 11 Duq.L.Rev. 701 (1973); See also Note, 21

Pitt.L.Rev. 741 (1960). Hence, we are not inclined to apply *Rimmel* to the facts of the instant case.[3] As our Supreme Court stated in *Rosche v. McCoy*, 397 Pa. at 615, 156 A.2d at 310:

"In the disposition of such a question the courts are confronted by conflicting policies. One is that a party should not be denied justice because reliance necessarily must be placed upon the testimony of a child of tender years. But, on the other hand, experience has informed us that children are peculiarly susceptible to the world of make-believe and of suggestions. Care must be exercised to keep the balance true as between these conflicting claims. So it is that much must be left to the discretion of the trial judge who hears and sees the witness."

3. Appellant contends also that certain questions he asked of the girl on cross-examination later in the day demonstrated that she did not understand what an oath was, to wit:

"Q. Do you know why you stood here this morning and raised your right hand?
A. (No audible response).
THE COURT: She nodded her head yes.
Q. Why did you do that? Do you know why you did that?
A. (No response).
Q. Do you remember raising your right hand here this morning?
A. Yeah.
Q. Do you know why you did that?
A. Why?
Q. Do you know, honey, do you know why you did that?
A. (No audible response).
MR. WAGNER: She shook her head no.
Q. Do you know what an oath is?
A. A what?
Q. An oath.
A. (No response).
Q. When you held your hand up this morning did you know you were taking an oath and swearing?
A. (No response).
Q. You understand what I'm asking you?
A. Yeah.
Q. Do you know why you did that?
A. No."

First, a similar contention was made and rejected in *Commonwealth v. Allabaugh*, supra. Second, the little girl's answers earlier in the day sufficiently justified the court's allowing her to testify, and we do not find that the fact that her vocabulary did not comprehend the word "oath" was enough to render that decision erroneous.

210

We find that the trial judge who heard and saw the infant witness in the instant case did not abuse that large measure of discretion which he is granted. Furthermore, he properly cautioned the jury to consider the youth of the witness in weighing the evidence. 3 Jones on Evidence § 20:12 (6th ed.1972). Both the colloquy and the court's charge adequately insured that appellant received a fair trial based upon competent evidence.

Judgment of sentence affirmed.