417 A.2d 246

**COMMONWEALTH of Pennsylvania**

v.

**Thomas DOLHANCRYK, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1979.

Filed Dec. 21, 1979.

Application for Reconsideration is Denied Feb. 15, 1980.

Malcolm W. Berkowitz, Philadelphia, for appellant.

D. Michael Emuryan, Assistant District Attorney, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROBERTS and LIPEZ, JJ.*

ROBERTS, Judge:

Appellant was charged with shooting or conspiring to shoot to death Ann Mauro, a six year old girl, during an exchange of gunfire with Ann's father at the Mauro residence. On August 12, 1976, a jury convicted appellant of voluntary manslaughter, attempt to commit voluntary manslaughter, conspiracy and hindering apprehension. After denying post-verdict motions, the trial court sentenced appellant to concurrent terms of imprisonment of 3 to 10 years for voluntary manslaughter and 1 to 2 years for hindering apprehension. Appellant contends that (1) the evidence is insufficient to prove guilt of voluntary manslaughter beyond a reasonable doubt; (2) the trial court erred in denying his motions for change of venue; (3) the court improperly restricted his questioning at voir dire; (4) prejudicial publicity tainted the jury; (5) testimony of the father of the victim was so inflammatory that it deprived him of a fair trial; (6) the trial court erred in failing to hold a hearing to determine the competency of a Commonwealth witness; (7) the Commonwealth withheld and destroyed exculpatory evidence; (8) the trial court erred in its instructions on voluntary manslaughter; (9) the trial court erred in denying motions for mistrial; and (10) the trial court erred in certain other rulings. We affirm.

Zane Browne testified that on the day of the shooting, he was at appellant's house, where appellant said that he was angry about a beating Joseph Mauro, father of the victim, had inflicted upon a friend. Appellant announced that he and some others were going to retaliate for the beating. Appellant owned a pistol and asked Browne to bring it to him. Armed with this gun, appellant and the others drove off. When they returned, appellant ordered Browne to bury his gun, another gun and some clothing, and

* Justice Samuel J. Roberts of the Supreme Court of Pennsylvania, is sitting by designation.

to help paint the car a different color. Appellant argues that, because neither Browne nor any other witness saw appellant at the shooting, this evidence is insufficient to prove guilt. A jury could find beyond a reasonable doubt, however, that this evidence established that appellant had either shot the victim or engaged in the conspiracy that produced her death. See *Commonwealth v. Vaughn*, 459 Pa. 35, 326 A.2d 393 (1974).

■ Appellant argues that the trial court erred in denying his motion for change of venue because publicity about the incident was inherently prejudicial. Appellant's trial was held in August, 1976, at the same time as that of his codefendant, Edward T. Kivlin, III. In *Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979), this Court, reviewing the same news articles submitted by appellant, determined that the publicity was not inherently prejudicial. Moreover, the articles rarely mentioned appellant's name, focusing instead upon Kivlin. Therefore, we reject appellant's contention.

■ Appellant asserts that the trial court improperly restricted his questioning at voir dire by refusing to permit him to inquire into the extent of each venireman's knowledge of the publicity generated by the incident. Instead, the trial court permitted appellant to inquire only whether the veniremen had heard of the incident and whether they had, as a result, formed a fixed opinion as to guilt. The trial court did not abuse its discretion in this matter. Inquiry at voir dire should be strictly confined to questions disclosing whether the veniremen are unqualified or hold a fixed opinion on guilt or innocence. *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Mosley*, 261 Pa.Super. 198, 395 A.2d 1384 (1978). Appellant's proposed questions went beyond that inquiry. See *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973); *Commonwealth v. Hoss*, 445 Pa. 98, 283 A.2d 58 (1971); *Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976). Appellant was permitted to question veniremen on all relevant matters. Further, appellant did not exhaust his per-

emptory challenges, indicating that he was satisfied with the jurors selected. See *Commonwealth v. Frazier*, 269 Pa.Super. 527, 410 A.2d 826 (1979). We find no error in the court's restriction.

 The trial court conducted voir dire in the hearing and presence of other prospective jurors. See Pa.R.Crim.P. 1106(e)(1)(A). Appellant contends that this procedure denied him an impartial jury. Nothing in the record indicates that this procedure allowed prejudicial information to infect the jury. Each of the jurors selected stated that he had not formed an opinion about guilt and, where we have determined that the publicity about the incident was not so widespread and inflammatory that every juror must be presumed to have been influenced by it, we cannot find fault with the trial court's exercise of discretion. See *Commonwealth v. Herron*, supra.

 Appellant also contends that the jurors learned of prejudicial information. Following voir dire, trial counsel saw a juror holding a copy of "Philadelphia Magazine," which had recently featured an article about the Warlock Motorcycle organization to which appellant and his codefendants belonged. Counsel did not, however, see whether the copy the juror held contained that article. Counsel informed the trial court of his observation and requested cautionary instructions. The court instructed the jurors to avoid watching the local news on television and to ignore any information that they might encounter about the case, and took steps to ensure that the jurors henceforth did not see any newspapers or magazines except those screened by court personnel. Thus, appellant received all the relief he requested.

The court sequestered the jurors in a local hotel. Several days after the start of trial, counsel requested a mistrial and renewed his request to change venue because he had learned that each of the rooms in the hotel was equipped with a television and that a television report concerning the decision of a codefendant in a separate proceeding to plead

guilty had aired the night before. Counsel feared that, despite the court's warnings not to watch the news, the jurors might have seen the story. The court denied the request. Appellant did not ask the court to inquire of the jurors whether they had seen the story broadcast the night before and the court did not make such an inquiry.

The trial court correctly denied appellant's motion for mistrial. It was speculative whether any· of the jurors had seen the television story, particularly when the court had instructed them not to watch the local news. Because appellant did not request the court to question the jurors on what they might have seen on television, appellant's suspicions were never confirmed. Further, because the news report related not to appellant's trial but to that of a codefendant, it is uncertain that it would have conveyed information prejudicial to appellant. This record does not support a conclusion that the trial court abused its discretion.

■ Appellant asserts that Mauro's testimony on cross-examination was so inflammatory that it deprived him of a fair trial. During cross-examination, Mauro repeatedly refused to cooperate, declining to answer questions and once calling trial counsel "a worm." Some of his comments accused counsel of improper behavior, appealed to the jurors to guard against succumbing to defense tactics, emphasized the loss of his young daughter and brought up extraneous matters. Again and again, his conduct prompted cautions and directions from the court.

In *Commonwealth v. Flood*, 302 Pa. 190, 197, 153 A. 152, 154 (1930), our Supreme Court stated that:

"there is no known rule of law that will prevent a relative from outbursts of grief while on the witness stand testifying in the case to a material matter; courts should, when necessary, handle such situations with a stern hand, and in the interest of justice it [sic] should summarily order a new trial, if the jury is, in the opinion of the court, swayed by such conduct."

Accord, *Commonwealth v. Evans*, 465 Pa. 12, 348 A.2d 92 (1975). We conclude that the jury was not swayed by Mauro's conduct. That the jurors were aware that Mauro strongly disliked appellant does not necessarily imply that they developed sympathy for Mauro. In fact, the vehemence with which Mauro expressed his opinions and the sarcastic and uncooperative nature of his replies may have weakened his credibility. Further, the trial court admonished Mauro on many occasions, alerting the jurors that his conduct was improper. The court also carefully cautioned the jurors not to be swayed by emotional displays. Finally, some of Mauro's remarks were permissible as responses to vaguely worded questions and inquiries that invited explanation and elaboration rather than an answer of "yes" or "no."

■ Appellant contends that the court erred in denying his request to appoint a psychiatrist to examine Browne and to hold a hearing to determine whether Browne was competent to testify. Browne had admitted that he had previously given police two statements exculpating appellant and that one of those was false while the other was only partly true. Browne also admitted that the Commonwealth had agreed to withdraw all charges against him in return for his testimony against appellant. Appellant contends that these admissions called into question Browne's ability to testify truthfully and that, once Browne's competency was in question, the court was obliged to hold a hearing to determine whether the witness was competent to testify. See *Commonwealth v. Chuck*, 227 Pa.Super. 612, 323 A.2d 123 (1974).

The trial court correctly refused appellant's requests. Browne's admission bore only on his credibility, not his ability to tell the truth. No evidence indicated that he suffered some mental defect rendering him incapable of testifying truthfully. While *Commonwealth v. Chuck*, supra, stated that the trial court must hold a hearing to determine competency when competency is in question, appellant's bald allegations did not place Browne's competency in question. Unfounded conclusions were no substitute for

evidence indicating that Browne was incompetent. See *id.* (proffered witness had history of treatment for mental problems). The jurors knew that Browne had given contradictory statements, had disavowed them and had agreed to testify in return for withdrawal of charges against him. If, aware of these facts, the jurors chose to believe Browne, that was their prerogative.

Appellant next contends that the Commonwealth withheld and destroyed certain evidence. In *Commonwealth v. Kivlin,* supra, we rejected the same claim. We do so again.

■ Appellant contends that the trial court erred in its instructions on voluntary manslaughter. Appellant did not raise this issue in post-verdict motions and the post-verdict court did not consider it. Consequently, this issue is not preserved for appellate review. See *Commonwealth v. Carrillo,* 483 Pa. 215, 395 A.2d 570 (1978).

■ Appellant argues that the trial court erred in denying his requests for mistrial on two occasions. Appellant requested a mistrial when one of the jurors was excused for reasons of health and again when, after a defense witness had testified, the prosecutor stated at side bar that the Commonwealth had evidence "concerning the truth of what happened to the child." Appellant failed to raise either of these issues in post-verdict motions and the post-verdict court did not consider them. These issues are also not preserved for review. See *Commonwealth v. Carrillo,* supra.

Finally, appellant assigns a number of the trial court's rulings as error. He asserts that the court erred in refusing to permit him to question Mauro about where he obtained his gun, about the exact length of time of the shooting and whether Mauro had picked up the victim when he fired at appellant and the others in the car. The court excluded the first question as collateral, the second because Mauro had already stated that he didn't know how long the shooting took and the third because Mauro had covered the question during direct examination. Over objection, the court permitted Mauro, on cross-examination, to relate both ends of a

telephone conversation, not just his own remarks, as appellant desired, and prohibited direct evidence designed to show that a codefendant not testifying at trial had been charged with murder only after making a statement exculpating appellant. We find no error in any of these rulings.

Judgment of sentence affirmed.