465 A.2d 650

COMMONWEALTH of Pennsylvania

v.

Chester George **FULTON**, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 12, 1983.

Filed July 22, 1983.

Reargument Denied Oct. 4, 1983.

Petition for Allowance of Appeal Denied May 8, 1984.

472

Alexander H. Lindsay, Jr., Butler, for appellant.

Robert F. Hawk, Assistant District Attorney, Butler, for Commonwealth, appellee.

Before POPOVICH, MONTGOMERY and VAN der VOORT, JJ.

VAN der VOORT, Judge:

Appellant's original conviction for statutory rape and attempted homicide was reversed by this court in *Commonwealth v. Fulton*, 271 Pa.Superior Ct. 430, 413 A.2d 742 (1980); he was granted a new trial due to a defective voir dire of the jury. At a second trial, the appellant was found guilty of statutory rape and attempted homicide. His appeal raises seven contentions of error. We will discuss the seven contentions in the same order as addressed by appellant's counsel. As we find no merit to such claims, we affirm.

I. Did the Court err in holding that the crime of statutory rape, a violation of 18 Pa.C.S. § 3122, is a lesser included offense of the crime of forcible rape, a violation of 18 Pa.C.S. § 3121?

█ The information filed in this case charged that appellant, in company with others, did "wilfully and unlawfully, knowingly and intentionally engage in sexual intercourse with one ___ Strothers, age 13, by forcible compulsion or threat of same . . .", citing 18 Pa.C.S. § 3121, (forcible rape) but not citing specifically § 3122 (statutory rape). In his charge, at the end of the first trial in March 1978, Judge Dillon gave the jury the alternatives of returning one of three verdicts: guilty of rape; guilty of statutory rape; and not guilty. The jury returned the second verdict.

In the second trial, which took place in January 1981, with Judge Kiester presiding, the court limited the Commonwealth to the charge of statutory rape, and attempted murder, as to which there had also been a verdict of guilty in the first trial. Guilty verdicts were returned on both counts.

It is the appellant's contention, relying upon the case of *Commonwealth v. Walker,* 468 Pa. 323, 332, 362 A.2d 227, 231 (1976) that (forcible) rape (§ 3121) and statutory rape (§ 3122) are two separate and distinct crimes, mutually exclusive, and that the information filed against this appellant charged a crime of forcible rape. Therefore, appellant contends the evidence submitted by the Commonwealth, to the extent it establishes statutory rape (presumably consensual) constitutes a fatal variance from the offense charged in the information ("by forcible compulsion or threat of same ..."). Therefore, he believes the statutory rape charge should be dismissed.

Appellant misreads *Walker,* as requiring his discharge. *Walker* does demonstrate that forcible rape and statutory rape are two different offenses against the Commonwealth. The court found, that under the facts of that case, the two offenses were "mutually exclusive." *Walker* could not be sentenced for both as there was only one criminal act accomplished. Appellant overlooks two important aspects of that decision. First, the prosecution was based on the 1966 version of 18 P.S. § 4721. Subsection (a) provided for prosecution for unlawful carnal knowledge against the will of the victim of any age, while (b) pertained only to *consensual* sexual relations with a female under the age of 16. The current enactments provide:

§ 3121. Rape

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(3) who is unconscious; or

(4) who is so mentally deranged or deficient that such person is incapable of consent.

§ 3122 Statutory rape

A person who is 18 years of age or older commits statutory rape, a felony of the second degree, when he engages in sexual intercourse with another person not his spouse who is less than 14 years of age.

A close reading of § 3122 reveals that consent is not required for a statutory rape conviction. Unlike the preceding § 4721, *intercourse by force or with consent* is punishable under the current enactment. Therefore, an acquittal of forcible rape does not bar a conviction for statutory rape arising from the same incident.

This brings us to the second point which appellant overlooks in his analysis of *Walker,* 468 Pa. 323 at 333 n. 5, 362 A.2d 227 at 232 n. 5. Footnote number 5 reads:

Although convictions for the crimes of statutory rape and rape based on a single act of intercourse are mutually exclusive under 18 P.S. § 4721, we express no opinion concerning the right of the Commonwealth to charge a defendant in an information or indictment with both crimes in the alternative. Indeed, given the proof problems inherent in the law of rape, there may well be situations where it is necessary and proper to charge both crimes as alternatives.

The court thereby, explicitly refused to address the issue whether both crimes could be alleged when only one act was performed. Implicitly therefore, the court also did not determine whether statutory rape was a lesser included offense of rape and hence need not be specifically charged in a criminal information. This brings us to the focus of the problem. Appellant argues that since *Walker* distinguishes between the two crimes, the second jury is barred from finding that the victim consented since the first jury found she had not. Therefore, he claims, the Commonwealth should have charged him in a second count with consensual, but underage sexual intercourse.

The trial court however found that the information, even if "not artistic enough", was adequate to charge appellant with statutory rape as it indicated the victim was "age 13." In the alternative, the trial court found statutory rape a lesser included offense of rape. (Opinion, p. 12)

> A purported variance between the indictment and the offense proved will not be fatal to the Commonwealth's case unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or otherwise impairs a substantial right of the defendant. *Commonwealth of Pope*, 455 Pa. 384, 317 A.2d 887 (1974). Generally stated, the requirement is that a defendant be given clear notice of the charges against him so that he can properly prepare a defense. *Commonwealth v. Wolfe*, 220 Pa.Superior Ct. 415, 289 A.2d 153 (1972).

*Commonwealth v. O'Brien*, 303 Pa.Superior Ct. 189, 191, 449 A.2d 642, 643 (1982). See also *Commonwealth v. Kelly*, 487 Pa. 174, 409 A.2d 21 (1979); and *Commonwealth v. Schomaker*, 293 Pa.Superior Ct. 78, 437 A.2d 999 (1981). In the current appeal, we find that the purported variance is not fatal as appellant had clear notice of the charges.

The information charged that appellant had engaged in sexual intercourse with a thirteen year old female. The fact that the Commonwealth stated its intent to prove in addition to statutory rape, also that such rape was unconsented to, could not have surprised the appellant. Appellant was not misled; he was apprised that he was accused of having sex with a thirteen year old victim. While it would have been preferable for the Commonwealth to have outlined the allegations under both sections 3121 and 3122, we do not find that retrial on § 3122 should be barred because of such oversight.

As we find that any variance between the information and the proof at trial is not fatal, we need not determine whether statutory rape is a lesser included offense of rape.[1]

II. Did the Court err in denying counsel for the defendant the opportunity to cross-examine a Commonwealth witness concerning the character, motivation and bias of the witness, and more specifically, the substance of any agreement or understanding between the witness and the Commonwealth, whereby the witness would receive lenient treatment in exchange for his testimony?

III. Did the failure of the defendant's trial counsel to cross-examine a key Commonwealth witness concerning any agreement between the witness and the prosecutor, whereby the witness would receive lenient treatment in return for his testimony, and that he had a prior felony conviction, constitute ineffective assistance of counsel by depriving defendant of his right to counsel as set forth in the Sixth Amendment of the Federal Constitution?

As the two complaints are inter-related, they will be addressed jointly.

Lang was a co-actor in the instant case. He pleaded guilty to statutory rape and eventually received a sentence of two to five years. He was called as a prosecution witness, and testified only with respect to two aspects of the case. The prosecuting attorney had previously advised the court and appellant's counsel that Lang would be interrogated on only those two points, and suggested that cross-examination should be restricted to those two phases. After some discussion, Judge Kiester stated: "I believe his cross examination is restricted to those two things, that is the ruling. We will have to rule on the questions when they arise. I don't know what his questions will be." (N.T., p. 190)

Lang then testified that he had in his cottage a hatchet similar to (but not the same hatchet) as the Common-

1. For a discussion of the lesser included offense doctrine see, *Commonwealth v. Williams,* 299 Pa.Superior Ct. 278, 281, 445 A.2d 753, 754 (1982) and *Commonwealth v. Wise,* 298 Pa.Superior Ct. 485, 444 A.2d 1287 (1982).

wealth's Exhibit 29, which had been found in a creek nearby the scene of the crimes. He also stated that appellant, the victim, and another man named Harris had left his cottage together. Appellant returned within 5 to 10 minutes, and Harris within 30 minutes. The victim did not return. Appellant's counsel limited his cross-examination to an affirmation that Exhibit 29 was not the witness's hatchet.

■ We find no error in Judge Kiester's preliminary ruling. The scope of cross-examination is within the discretion of the trial court and the court's decision will not be reversed absent an abuse of discretion. *Commonwealth v. Sisco*, 484 Pa. 85, 398 A.2d 955 (1979); *Commonwealth v. Green*, 290 Pa.Superior Ct. 76, 84–5, 434 A.2d 137, 141 (1981); and *Commonwealth v. Brinton*, 275 Pa.Superior Ct. 304, 418 A.2d 734 (1980). Here the court simply indicated it would limit cross examination to the areas opened on direct examination. Such a ruling is a proper limitation of cross-examination. *Commonwealth v. Ervin*, 262 Pa.Superior Ct. 322, 396 A.2d 776 (1978). See also *Commonwealth v. Lobel*, 294 Pa.Superior Ct. 550, 440 A.2d 602 (1982) (defendant may not develop his own case by cross-examination.) Here the court reserved comment on any specific questions until they were raised on cross-examination. We find no abuse of the court's discretion.

■ We recognize that a defendant has a right to cross-examine a witness on his or her possible biases. *Commonwealth v. Dawson*, 486 Pa. 321, 405 A.2d 1230 (1979); *Commonwealth v. Sullivan*, 485 Pa. 392, 402 A.2d 1019 (1979); and *Commonwealth v. Cheatham*, 429 Pa. 198, 239 A.2d 293 (1968). However as we have found that the trial court itself did not necessarily inhibit such, we must look to see if counsel's failure in this regard can be deemed to have been ineffective assistance. See *Commonwealth v. Baston*, 242 Pa.Superior Ct. 98, 363 A.2d 1178 (1976). Appellant contends that his trial counsel was less than effective in not inquiring, of Lang, about his entry of a guilty plea.

An evaluation of counsel's stewardship of his client's case is always one of the most formidable and troublesome inquiries an appellate court encounters. For it

would be a rare breed of litigator who, looking back upon his representation in a particular case, would be completely satisfied with his advocacy. It is precisely with these thoughts in mind that "our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604–605, 235 A.2d 349, 352–53 (1967) (emphasis original) (footnote omitted).

*Baston,* 242 Pa.Superior Ct. 102, 363 A.2d 1178 (footnote omitted). In *Baston* the court was faced with a similar challenge. After observing that the questioned testimony was "crucial" to the prosecution the court held:

We perceive this issue to require a four-part analysis of the record: (1) was there a "deal;" (2) was defense counsel aware of the deal, and, if he was not, was the record of such nature that counsel should have been aware of the deal; (3) could counsel, on cross-examination, have pursued the "deal;" and, (4) as is most critical in cases of this nature, was defense counsel's cross-examination deficient when tested by *Commonwealth ex rel. Washington v. Maroney,* supra.

*Id.,* 242 Pa.Superior Ct. 98 at 107, 363 A.2d 1178, 1183 (footnotes omitted.) [2] We will follow the above four step analysis.

■ The witness had entered a guilty plea to statutory rape and was sentenced to two to five years. Whether this was pursuant to a "deal" is unclear from the record. However due to our analysis of the remaining factors we find it

**2.** The third factor was made necessary by the particular circumstances of that case. Id. n. 14.

unnecessary to remand for a determination of whether a deal was entered. Defense counsel was clearly aware of the situation; and as we found above, counsel could have explored the situation. Thus we must determine whether counsel was effective. In this respect, the current case is distinguishable from *Baston.*

The co-actor's testimony in *Baston,* supra, was critical to the case; but for such, Baston could not be criminally linked to the crime. The situation in the current case is quite different. Not only could the victim link appellant to the crimes, but the investigating officers located him at the alleged scene of the crimes and within a very short time after the victim had escaped therefrom and sought assistance nearby. Also, the witness here, having been sentenced was not as amenable to a "deal" as the juvenile in *Baston,* who was on juvenile probation. This was a second trial on the matter, Lang having been sentenced sometime before, it no longer could be assumed that he was acting under the expectation of a deal.

Of equal weight to this question is what effect the requested inquiry could have had. While appellant argues it would have impeached the witness, it could have also been very damaging to appellant's case. Testimony of a co-actor to the effect that he or she had entered a plea to the same or related charges is objectionable and prejudicial as the jury could perceive that it reflects upon the defendant's culpability. *Commonwealth v. Witherspoon,* 481 Pa. 321, 392 A.2d 1313 (1978).

The examination and cross-examination of witnesses is a matter in the first instance clearly within the province of trial counsel. *Witherspoon,* supra, and *Commonwealth v. Norris,* 305 Pa. Superior Ct. 206, 451 A.2d 494 (1982). In light of the limited content and value of the witness's testimony on direct examination,[3] we find that counsel could have reasonably concluded that enlightening the jury to the fact that a witness who was with the appellant at the

3. A reading of Lang's testimony, gives the impression that he helped the prosecution's case as little as possible (N.T., pp. 191–195).

pertinent time, had pleaded guilty to a serious offense arising from the same episode, could prejudice appellant more than benefit him. Counsel was not ineffective in this respect.

IV. Did the prosecuting attorney commit reversible error by attempting to create an impermissible adverse inference in the minds of the jurors regarding the defendant's exercise of his Fifth Amendment rights at trial by the prosecutor's persistent reference in his closing argument to the evidence against the defendant being rebutted and inadequately cross-examined?

V. Did the failure of the defendant's trial counsel to object to improper remarks of the prosecuting attorney during his closing summation to the jury, constitute ineffective assistance of counsel, thereby depriving defendant of his right to counsel as set forth in the Sixth Amendment of the Federal Constitution?

Appellant complains of eight particular instances where he believes prosecuting counsel exceeded the permissible bounds of advocacy. (N.T., pp. 306, 307, 308, 309 and 312) All eight comments addressed the victim's credibility. In four cases the district attorney noted that various parts of the victim's testimony remained unrebutted; in the other four instances counsel commented on areas where the victim's story had not been effectively damaged by cross-examination.

In his closing argument, defense counsel pointed out several inconsistencies in the victim's story, as well as the negative results of various laboratory tests. Counsel also argued that the case rested on the victim's testimony; the only issue the jury had to resolve was her credibility. (N.T., p. 302) Counsel argued that the victim was "the only individual in the whole Commonwealth's case [who] knows what happened." (Id. at 297).

A prosecuting attorney may properly respond to opposing counsel's argument which questions the credibility of a witness. The Commonwealth may properly refer to the

fact that the incriminating evidence was uncontradicted. Such will not necessarily be deemed to be a reference to a defendant's failure to testify. *Commonwealth v. Kjersgaard*, 276 Pa.Superior Ct. 368, 375, 419 A.2d 502, 506 (1980); *Commonwealth v. Ashmore*, 266 Pa.Superior Ct. 181, 189, 403 A.2d 603, 606 (1979); and *Commonwealth v. Kloch*, 230 Pa.Superior Ct. 563, 589, 327 A.2d 375, 390 (1974).

■ In the current case we find that the Commonwealth's closing argument was proper comment in rebuttal to that of the appellant. It went to the strength of the victim's credibility and did not direct the jury's attention to appellant's failure to testify. Furthermore, appellant expressly informed the court that he did not want any instruction addressing a defendant's right not to testify. (N.T., p. 315) As appellant requested to forego such curative instruction, which could have dissipated the harm he perceives, he cannot now complain of such omission. See *Commonwealth v. Simons*, 275 Pa.Superior Ct. 564, 419 A.2d 44 (1980). Finally, we note that only one of the eight complained of comments referred to a situation in which appellant was allegedly alone with the victim.

As we find that the closing argument was not beyond the limits of proper comment, counsel cannot be deemed ineffective in not objecting to such comment.

■ VI. Did the Court err in permitting the victim to make an in-court identification of the defendant after the victim had made an out-of-court identification of the defendant in violation of defendant's right to counsel?

On November 11, 1977, about 10 days after the events with which appellant and others were charged and after appellant had been arrested, the victim was shown a group of thirty photographs of white males, including the appellant and his three companions. She identified appellant's photograph. He now contends that her subsequent in-court identification should have been suppressed, because the "photo-lineup" was held without appellant's counsel having

been afforded an opportunity to participate in the lineup. *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970).

The lower court found that the in-court identification of appellant by the victim was not so "tainted" by the November 11, 1977 out-of-court photo identification as to render it inadmissible. *Whiting,* supra; *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974); and *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978) do hold that a photo lineup, after the accused has been arrested, is of such substantial importance that the accused is entitled to have counsel present. An out-of-court identification is "illegal" and may not itself be used as evidence. Furthermore, if the illegal out-of-court identification is a substantial factor in establishing a subsequent identification (in-court, or otherwise), the subsequent identification is "tainted" and may not be received in evidence.

However, as Judge Kiester points out in this present case, the victim's in-court identification came from a source independent of the post-arrest photo identification, specifically her extended exposure to appellant's presence in the confines of a car, and the cottage and its environs for a period of a little less than 24 hours. Compare, *Commonwealth v. Beach,* 267 Pa.Superior Ct. 303, 406 A.2d 1052 (1979). An independent basis was demonstrated and the in-court identification was therefore proper.

VII. Did the Court err in denying the defendant's request for a hearing on the mental competency of the victim and chief prosecution witness?

The second trial in this case began on January 26, 1981. The victim had been in a facility called Vision Quest since April 1980, "following several other unsuccessful placements and tragic events in her life." A letter from a staff member of Vision Quest to the District Attorney's Office stated that the victim was "extremely hostile and aggressive ... with severe feelings of rejection, depression and a marked inability to trust others"; that "she made a considerable amount of progress in school" and that "her

appearance in court, an unfriendly and unsafe atmosphere, ... would be a serious setback to her progress ...." (N.T., pp. 2–3)

When this letter was disclosed to Judge Kiester, defense counsel asked that the witness's testimony be suppressed, for this and other reasons, and that the Court make "some type of determination" as to "whether the Court feels her testimony will be admissible for trial."

Judge Kiester commented that nothing had been presented to him to show that the witness "is mentally incompetent and unable to testify as to the facts", but only that "it might be harmful to [her] if ... called ... as a witness in this prosecution." (N.T., p. 7)

 It is for the trial judge to determine whether a witness is competent to testify. Such decision will not be overturned absent a clear abuse of the court's discretion. *Commonwealth v. Marshall*, 249 Pa.Superior Ct. 333, 378 A.2d 322 (1977). Moreover, the trial court need not order an investigation of a witnesses' competency unless he or she has some doubt of such after having observed the witness. Id. As to witnesses who are suspected of suffering with mental illness, his or her testimony is still competent unless he or she is unable to give a correct account of the matters at issue. *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974); *Kakas v. Com. Dept. of Public Welfare*, 65 Pa.Cmwlth Ct. 550, 442 A.2d 1243 (1982).

 We find no reason to disagree with the trial court's assessment of the witness' ability to testify.

Judgment of sentence affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

The trial court erred in limiting defense counsel's cross-examination of the prosecution's "key" witness. The jury was entitled to know that Lang was an accomplice and the existence of any promises of leniency which might have

been extracted by Lang in exchange for his plea of guilty to a statutory rape charge. Because such evidence bears on a witness's credibility, the refusal of the trial court to allow appellant an opportunity to conduct proper cross-examination constitutes reversible error. *See Commonwealth v. Randall,* 183 Pa.Super. 603, 615, 133 A.2d 276, 282 (1957).

In *Randall,* the trial court restricted defense counsel's cross-examination of Homer Smickley, a prosecution witness. Smickley had been indicted on charges which arose out of the same set of circumstances as the charges which were launched against defendant Randall. However, when the cases were called for trial, the district attorney petitioned the trial court for leave to "withdraw" the indictment against Smickley, which was granted.

During the trial, Smickley admitted on direct examination that he was an inmate on a violation, and that he had entered a plea of guilty to a liquor violation in connection with Randall's case. When defense counsel sought to elicit testimony from Smickley that another charge had been withdrawn, and to question him on the circumstances under which the charge had been withdrawn, the court sustained objections to the cross-examination. We said the following:

"Of course, if the witness is under indictment for the same crime, or for a crime growing out of, or closely related to, the very offense for which the defendant is being tried, so as to form a part of the same occurrence or transaction, it is proper for the jury to know it, as bearing on the witness's interest in the immediate matter * * * ; and the jury are entitled to know it." *The questions and answers and comments of counsel in connection with the testimony of Smickley clearly portrayed to the jury the nature of Smickley's connection with the cases under trial so that the jury could not have been under any misapprehension as to Smickley's interest, possible bias or prejudice or that his testimony may have been given with expectation of immunity, clemency or leniency.* Moreover, the jury was adequately instructed that it should be satisfied upon the point of

the truthfulness of his testimony and "should carefully and clearly scrutinize his testimony, accept it with caution, not only because of any interest that Homer Smickley might have, but *because his testimony is evidence from a corrupt source, in view of the fact that he was an accomplice and pleaded guilty to the charge."* (Emphasis added)

Similarly, defense counsel should have been allowed to elicit testimony on the nature of Lang's connection "so that the jury could not have been under any misapprehension as to [Lang's] interest, possible bias or prejudice that his testimony may have been given with expectation of immunity, clemency or leniency." *Id.* In the case at bar, it was "the Defense position that once [the prosecutor] put [Lang] on the stand [the prosecutor] open[ed] him up to any type of cross-examination". *Id.* In my view, this request should have been granted.

It is interesting to note that after the jury had retired to deliberate it submitted the following question to the court:

"May we have a copy of John Lang's and Pauline's [the victim's] testimony? At least the part that describes the men as they left the cottage and at the scene of the stabbing. Also her original description of the four men. Signed William J. Held [the foreman]" (N.T. 334)

Although the trial court denied this request, there is no doubt in my mind that Lang's testimony was crucial to the prosecution's case, and, for this reason, the defense counsel should have been allowed an opportunity to cross-examine him. *See Commonwealth v. Coades,* 454 Pa. 448, 450, 311 A.2d 896, 897 (1973) ("If we permit a jury to infer that a co-indictee's testimony is biased because he *may* receive favorable treatment, we cannot logically preclude the jury from drawing the same inference when the co-indictee may *have already received* favorable treatment.") (Emphasis in original). Additionally, there was no instruction which might have cured the error, as was done in *Randall.* Hence, my dissent.