538 A.2d 53

**COMMONWEALTH of Pennsylvania**

v.

**George TRUDELL, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Richard VERDON, Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 1987.

Filed Feb. 22, 1988.

354

356

Jane R. Goldberg, Philadelphia, for appellant in No. 1640.

Jay S. Gottlieb, Philadelphia, for appellant in No. 1792.

JoAnn Verrier, Assistant District Attorney, Philadelphia, for Com., appellee.

Before BROSKY, WIEAND and BECK, JJ.

BECK, Judge:

At a jury trial, appellants, former Philadelphia police officers, together with one other defendant who has not appealed, were convicted of bribery in official matters and criminal conspiracy. The evidence established that appellants accepted a $400.00 payment to ensure two reputed mob hitmen, Joseph Pedulla and Victor DeLuca, that their bail would not rise above $50,000.00 each. After accepting payment, appellants expedited DeLuca and Pedulla's processing and arraignment, and they were in fact released on $50,000.00 bail each.

Appellants were subsequently brought to trial. DeLuca and Pedulla testified against them. Both appellants *inter alia* challenge the competency of these witnesses, but only appellant Trudell has preserved any issues for appeal.

Although both appellants filed timely post-verdict motions, those motions simply stated that the verdict was contrary to the law and weight of the evidence. Such boilerplate challenges do not preserve any issues for appellate review. *Commonwealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (1983). Although appellant Verdon "re-

served a right" to file supplemental post-verdict motions, the record does not reveal that he filed them. Therefore, appellant Verdon has failed to preserve any issue for appeal. *Commonwealth v. Kelly*, 365 Pa.Super. 28, 528 A.2d 1346 (1987). We affirm his judgment of sentence.

Appellant Trudell, while having filed boilerplate post-verdict motions, did seek and obtain court permission to file supplemental motions, thereby preserving those issues contained in his filed supplemental motions. *Commonwealth v. Rosko*, 353 Pa.Super. 307, 509 A.2d 1289 (1986); *Commonwealth v. Holmes.*

Appellant Trudell has preserved and raised the following claims on appeal: (1) that witness Joseph Pedulla was incompetent to testify; (2) that the testimony of witnesses Victor DeLuca and Joseph Pedulla was patently unreliable; (3) that certain diagrams used by the Commonwealth were impermissibly distorted; (4) that the prosecutor commented on appellant's failure to testify; and (5) that juror misconduct tainted the entire jury panel. We find all these contentions meritless and so affirm appellant Trudell's judgment of sentence.

Trudell first argues that Commonwealth witness Joseph Pedulla, an admitted murderer and mobster, should have been ruled incompetent to testify because he had committed perjury before the grand jury and allegedly lacked the moral responsibility to tell the truth. Pedulla admitted to lying before the grand jury but was never prosecuted for perjury. He claimed to have lied pursuant to a mob "code of silence" which required him to protect those persons involved in illegal activities with him.

The court conducted an inquiry into Pedulla's competency. In response to the court's questioning, Pedulla repeatedly insisted that since he left the mob his reasons for lying no longer existed. He also acknowledged that taking the oath meant something to him and asserted his belief that only the truth could protect him now.

The trial court found Pedulla competent to testify. In support of this conclusion, the court noted that although in

the past Pedulla had displayed contempt for the duty to tell the truth, at present he was conscious of that duty and could observe it.

■ The competency of a witness to testify is a matter within the sound discretion of the trial judge, whose decision will not be reversed absent a clear abuse of discretion. *Commonwealth v. Short*, 278 Pa.Super. 581, 420 A.2d 694, 696 (1980); *Commonwealth v. Chuck*, 227 Pa.Super. 612, 323 A.2d 123 (1974). The breadth of that discretion is wide since the trial judge has the opportunity personally to observe and evaluate the demeanor and sincerity of the witness. *Commonwealth v. Mangello*, 250 Pa.Super. 202, 206, 378 A.2d 897, 899 (1977). Indeed, we have recognized that the better practice where questions of witness competency arise is to permit the witness to testify and then leave the matter of credibility to the fact finder. *Commonwealth v. Short*, 278 Pa.Super. at 585–86, 420 A.2d at 696; *Commonwealth v. Mangello*, 250 Pa.Super. at 206–08, 378 A.2d at 898–99.

■ The standard by which a trial court's exercise of discretion on questions of competency must be guided is quite simply stated. In general, the competency of a witness to testify is presumed and the burden of demonstrating the incompetency of the witness falls on the party objecting to competency. *Id; see also* 42 Pa.Cons.Stat.Ann. § 5911 (Purdon 1982) ("Except as otherwise provided in this subchapter, all persons shall be fully competent witnesses in any criminal proceeding before any tribunal"). Indeed, when the witness is a sane adult, the court need not even conduct an inquiry into competency unless it has some doubt concerning the witness' competency based on the court's observation of the witness. *Commonwealth v. Fulton*, 318 Pa.Super. 470, 465 A.2d 650 (1983).

Several exceptions to the general rule of competency are found in our statutory law. These include husband-wife incompetency, 42 Pa.Cons.Stat.Ann. §§ 5913, 5924 (Purdon 1982), and the "Dead Man's Rule," 42 Pa.Cons.Stat.Ann. § 5930 (Purdon 1982). Of somewhat greater importance to

the instant case is the final statutory exception to the general rule of competency, which renders incompetent as a witness any person who has been convicted by a court of this Commonwealth of perjury. 42 Pa.Cons.Stat.Ann. §§ 5912, 5922 (Purdon 1982). Although at common law persons convicted of certain crimes other than perjury, such as those involving fraud or deceit, were also deemed incompetent, this ground for incompetency no longer exists. In fact, the perjury exception itself has been given a limited scope by our courts, which have held that only a judgment of conviction of perjury will render a witness incompetent, *Commonwealth v. Myers,* 485 Pa. 519, 403 A.2d 85 (1979), and that an admission of perjury alone is insufficient. *Commonwealth v. Levenson,* 282 Pa.Super. 406, 422 A.2d 1355 (1980). *See generally* Packel, L. and Poulin, A., *Pennsylvania Evidence,* § 601.4 at 375–77 (1987).

In addition to these statutory exceptions, two other exceptions to the general rule of competency, both of limited scope, have been created by our courts. These exceptions focus on immature and insane or mentally disabled witnesses. As to child witnesses, our courts have expressed a concern that every parent will recognize. Children are peculiarly susceptible to "make-believe" and, therefore, are often not sufficiently aware of or able to fulfill their duty to tell the truth. *Rosche v. McCoy,* 397 Pa. 615, 621, 156 A.2d 307, 310 (1959). Because of this concern, a special rule of competency for children under the age of fourteen has developed. As to them, an inquiry into competency is required, with the goal being to ascertain whether, as the *Rosche* Court stated, the child has:

> (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that [the witness] is called to testify about and (3) a consciousness of the duty to tell the truth.

*Rosche v. McCoy,* 397 Pa. at 620–21, 156 A.2d at 310.

■ In the child witness cases, the last factor, "consciousness of the duty to tell the truth", has received particular

attention. Although some cases appear to regard this as a stringent requirement that the child be aware of the specific concept of divine punishment for lying, *Commonwealth v. Rimmel*, 221 Pa.Super. 84, 289 A.2d 116 (1972), this is not the focus of the majority of cases deciding this issue. *Commonwealth v. Mangello*, 250 Pa.Super. 202, 378 A.2d 897 (1977). Presently, the trial court is vested with considerable discretion in adjudging a child witness' consciousness of a duty to tell the truth and appears to be required to find only that the child is sincere, understands the importance of truth-telling and feels that lying is wrong and may have adverse consequences. *Commonwealth v. Short; Commonwealth v. Mangello.*

■ The other judge-made exception to the general rule of competency is found in cases involving witnesses who allegedly suffer from some type of mental disability. In these cases, the general standard for competency is stated somewhat differently than in the child witness cases. It has been stated that the witness must be found to be able to give a correct account of the matters he/she has seen or heard and to understand the meaning of the oath. *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974). Perhaps the most significant difference between these cases and those involving child witnesses is that whereas the child witness cases focus attention on the consciousness of the duty to tell the truth because of a child's natural inclination to pretend, the mentally disabled witness cases focus their primary attention on the witness' ability to perceive, remember and communicate facts. *Commonwealth v. Ware*, 459 Pa. at 354, 329 A.2d at 268; *Pennsylvania Evidence*, § 601.7 at 392–94. Where the court is assessing the competency of a mentally disabled person, the main concern is understandably whether the witness has the mental ability to understand what he observes, remember it and accurately relate it, since many mental disorders may well affect these mental functions. *See, e.g., Commonwealth v. Goldblum*, 498 Pa. 455, 463, 447 A.2d 234 (1982) (witness was of below average intelligence and suffered from organ-

ic brain damage that allegedly affected his ability to distinguish between fact and fiction).

■ Turning to an analysis of the competency question before us, we perceive appellant's argument as to the competency of Pedulla as an attempt to draw elements from both the child witness and mentally disabled witness cases and to apply them to this case, which involves a witness who does not fit into either the category of a child witness or of a mentally disabled witness. Appellant also seeks to have us give more attention to the fact that Pedulla admittedly lied to the grand jury than the law requires. We are unpersuaded by these arguments and agree with the trial court's determination that Pedulla was competent to testify.

Appellant seeks to have us reverse the trial court's finding of Pedulla's competency largely because Pedulla is a convicted criminal and an admitted liar who at one time disregarded his duty to tell the truth out of a sense of responsibility to his organized crime group's code of silence. As the foregoing survey of the law of competency demonstrates, none of these facts concerning Pedulla make him legally incompetent. They are all relevant only to Pedulla's credibility.

■ The fact that Pedulla admits that he has previously lied, even in the context of a grand jury proceeding, is not a ground for a finding of incompetency. As we have stated, only an actual judgment of conviction of perjury provides such a ground. Moreover, we have previously held that a witness' admission of prior lying alone does not even require that the trial court conduct an inquiry into the witness' competency and bears only on his credibility absent evidence of a mental defect that might render the witness incapable of testifying truthfully. *Commonwealth v. Dolhancryk*, 273 Pa.Super. 217, 417 A.2d 246 (1979).

Similarly, Pedulla's commission of other crimes not involving perjury is not a ground for incompetency. As we have also demonstrated, only a conviction for the crime of perjury is relevant under our law.

Lastly, neither Pedulla's prior allegiance to a "code of silence" nor his somewhat evasive answers to the trial judge's questions regarding Pedulla's present attitude toward lying to protect himself persuade us that Pedulla was incompetent. Appellant apparently finds these circumstances probative of either the fact that Pedulla is not conscious of a duty to tell the truth, as a child witness might not be, or that, as appellant states in his brief, Pedulla is a "sociopath" who cannot tell the truth, as a mentally disabled person might not. We, on the other hand, have carefully reviewed Pedulla's answers to the trial judge's competency examination and conclude, as did the trial court, that Pedulla was conscious of the duty to tell the truth and was mentally capable of doing so, although in the past he has chosen to disregard this duty.

The record reveals that Pedulla comprehended the obligation of his oath. Although Pedulla experienced some difficulty in comprehending the trial judge's hypothetical questions regarding truthfulness, the judge was satisfied that Pedulla's difficulty in responding to the hypothetical questions did not result from his lack of understanding the obligations of his oath. During the colloquy, Pedulla stated that the oath meant "something" to him. The judge then asked Pedulla if, hypothetically, Pedulla would lie at trial if he felt the need to protect himself. Pedulla at first said he could not answer, since such a need to lie was not in fact present at this trial. He then said that he did not think he would lie. Thus, the colloquy shows that Pedulla understood the obligations of the oath. We agree with appellant that Pedulla's answers were somewhat evasive. We note, however, that a witness need not give textbook perfect answers in the colloquy in order to have his competency upheld. *Commonwealth v. Mangello; Commonwealth v. Allabaugh*, 162 Pa.Super. 490, 493, 58 A.2d 184 (1948). Furthermore, nothing in the colloquy indicates that Pedulla suffered from any sociopathic mental disorder that might prevent him from testifying truthfully, nor did appellant present any other evidence to that effect.

If we were to find this witness incompetent, we would be engrafting upon our existing law a new, overriding requirement as to the competency of a sane adult witness. We would be ignoring the traditional presumption of competency, the presumption that the taking of the oath by such a witness is a sufficient assurance that the oath is understood, regarded as important and can be complied with. Rather, we would be requiring that in every case the trial court probe both the truthfulness of the witness in the past and the present intention of the witness as to the truthfulness of his testimony. This we refuse to do. Rather, we find that under the existing law of competency, the trial court was correct in concluding that Pedulla was competent to testify and in leaving the assessment of Pedulla's credibility to the jury.

In addition to challenging the witness' competency, appellant argues the testimony of both Pedulla and DeLuca was so unreliable that the jury verdict can not stand because it was based on conjecture. In essence appellant argues that the verdict is not supported by the weight of the evidence. We disagree. Absent a finding of abuse of discretion, the decision of the trial judge as to whether the verdict was against the weight of the evidence is not to be disturbed on appeal. The standard is not whether another court would have decided the case in the same way, but whether the verdict is so contrary to the evidence that justice requires the awarding of a new trial. *Commonwealth v. Polk*, 347 Pa.Super. 265, 269, 500 A.2d 825, 827 (1985); *Commonwealth v. Taylor*, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984). Where evidence offered is so unreliable and/or so contradictory that it renders any verdict based thereon as pure conjecture, justice requires that the jury not be permitted to return such a verdict. *Commonwealth v. Smith*, 502 Pa. 600, 467 A.2d 1120 (1983); *Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545 (1976).

We cannot say that the testimony of either Pedulla or DeLuca was so unreliable or contradictory that a verdict

could not be based on it. Pedulla admittedly testified differently before the grand jury in the same case. At the grand jury hearing, Pedulla maintained that he did not remember how many police officers came into his cell the night in question nor did he remember asking anyone to speed his arraignment. At trial, he testified in detail concerning the actions of the officers in question and the conversations he had with them the night of his arrest. However, such discrepancies between a witness' trial testimony and prior inconsistent statements do not prevent a jury from making a rational consideration of the credibility of the witness at trial. *Commonwealth v. Farquharson; Commonwealth v. Smith; Commonwealth v. Goldblum*, 498 Pa. 455, 447 A.2d 234 (1982). Moreover, the trial testimony of both Pedulla and DeLuca was consistent and remained so through cross-examination. The court, having concluded that a rational consideration of the evidence was possible, correctly left the weight of the evidence for the jury to determine. *Commonwealth v. Levenson*, 282 Pa. Super. 406, 422 A.2d 1355 (1980); *Commonwealth v. Chuck*, 227 Pa.Super. 612, 323 A.2d 123 (1974).

■ Appellant's remaining challenges can be dismissed summarily. Appellant argues that the trial court erred by permitting the Commonwealth to use certain diagrams, termed "flow charts," which tracked the progress of prisoners through police headquarters during processing of the two prisoners in question. The admissibility of a diagram is within the sound discretion of the trial court. *Commonwealth v. Ayala*, 277 Pa.Super. 363, 419 A.2d 1187 (1980). The trial court, after appellant objected that the chart was not totally representative, carefully instructed the jury regarding the accuracy and shortcomings of the chart. Thus, no prejudice against appellant could have resulted from the Commonwealth's use of the charts. *Commonwealth v. Smith*, 313 Pa.Super. 138, 150, 459 A.2d 777, 783 (1983); *Commonwealth v. Schroth*, 479 Pa. 485, 388 A.2d 1034 (1978).

■ Neither was the appellant deprived of a fair trial when the prosecutor in his closing argument stated that

certain testimony relating to a statement made by the third defendant to Pedulla and DeLuca had remained unchallenged. The prosecutor's statement did not amount to a comment on the failure of any of the defendants to take the stand. First, the testimony could have been, and as defense counsel contended at trial, was challenged by means other than through the testimony of one of the defendants. Second, a prosecutor may properly refer to the fact that certain evidence remained uncontradicted. *Commonwealth v. Fulton*, 318 Pa.Super. 470, 481, 465 A.2d 650, 656 (1983); *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974). Third, the trial court properly instructed the jury that the defendants did not have to testify, present any evidence, or challenge any evidence. Again, no prejudice resulted even if the remark were improper. *Commonwealth v. Torres*, 329 Pa.Super. 58, 68, 477 A.2d 1350, 1354 (1984).

■ Finally, the trial court committed no error in refusing to grant a mistrial after one of the jurors interrupted the counsel for the third defendant during closing arguments. The court called a recess and questioned the juror closely. Although the juror admitted asking the other jurors if they felt, as he did, that they were being scolded and shouted at by the defense counsel, the juror stated that he did not discuss the case, evidence or witnesses with any other juror. The trial court then acted appropriately by removing that juror and by examining the rest of the jury. The refusal of a new trial on the basis of alleged juror misconduct is within the sound discretion of the trial judge. *Commonwealth v. Posavek*, 278 Pa.Super. 265, 420 A.2d 532 (1980). No abuse of that discretion is present in this instance.

We affirm the judgment of sentence of appellants Verdon and Trudell.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

While I concur with the result reached and generally speaking, with the fine analysis of Judge Beck with respect

to the various issues presented, I am very troubled by the factual scenario of this case and feel compelled to write separately to express my concern.

I find it revolting and a mockery to justice and fairness the District Attorney's usage of Pedulla and DeLuca as key witnesses in this case, who are alleged perjurers, although not convicted as such, to sustain the Commonwealth's position in this case.

It is a true commentary that the District Attorney cannot choose the witnesses to criminal activity. Consequently, the choice of witnesses for trial is often very limited. However, it is also true that our system of criminal justice is founded upon notions of fundamental fairness and justice. Such fundamental concepts have led us to structure our criminal system so as to presume an accused innocent until proven guilty; and not just proven guilty but proven guilty beyond reasonable doubt.

In this context, two police officers with years of service have been found guilty of bribery and conspiracy based, in large part, on the testimony of two convicted "hit men" who have admittedly lied about this matter under oath in grand jury proceedings, who have evidenced a total disdain for the oath and who have also evidenced a likelihood to say whatever will best advance their own interests.

To further complicate this scenario, the testimony was elicited by virtue of a bargain with the District Attorney's office whereby these two key witnesses were to receive favorable treatment as to the potential perjury charges as well as other pending charges. Under this factual scenario, the integrity of our courts as a vehicle in the pursuit of truthfulness has been strained to a point nearing intolerable limits.

It further concerns me that in situations like these, the District Attorney is put in a discretionary position as to keeping the key witnesses competent to testify. As aptly illustrated in the majority opinion, Pedulla and DeLuca would not be statutorily incompetent unless convicted and sentenced for perjury. Yet the District Attorney is charged

with making the decision to prosecute the individuals for perjury or whether to forego such prosecution. Hence, the District Attorney is capable of keeping the admitted or suspected perjurer competent to testify and any disqualifying function of the statute is avoided.

I question the wisdom of requiring a conviction and sentencing for perjury to render the individual incompetent under circumstances such as these. Is anything really gained in requiring the Commonwealth to prove formally what is freely admitted by the perjuring witness? If there is something patently unreliable in the testimony of a convicted perjurer, so much so that our law will not allow him to take the witness stand, I see no greater indicia of reliability of the witnesses in this case under the factual situation presented.

The integrity of our courts in promoting truth and justice is compromised by cases such as these. I caution the District Attorneys of this Commonwealth against knowingly avoiding the purpose of the incompetency statute by selectively avoiding prosecutions for perjury against individuals like Pedulla and DeLuca. Unfortunately, I agree that under the current law of this Commonwealth, the witnesses were competent to testify and as there was some corroborating evidence of guilt, I do not believe we would be justified in taking the case from the jury.