J-S07015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| COLBY DAVID ORNER, | |
| Appellant | No. 673 MDA 2015 |

Appeal from the Judgment of Sentence November 12, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007025-2013

BEFORE:  BOWES, OTT, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 29, 2016**

Colby David Orner appeals from the judgment of sentence of six to fourteen years imposed after a jury convicted him of rape, involuntary deviate sexual intercourse ("IDSI"), sexual assault, and indecent assault. Marc J. Semke, Esquire has filed a petition to withdraw from representation and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  In response to counsel's petition to withdraw, Appellant filed a *pro se* petition to have his appeal discontinued.  We grant counsel's petition to withdraw and grant Appellant's *pro se* petition to discontinue this appeal.

The trial court succinctly summarized the factual history as follows:

---

\* Former Justice specially assigned to the Superior Court.

        In the evening hours of December 31, 2012, [M.B.] was celebrating the New Year with her boyfriend and their neighbor Colby Orner, the Defendant. At approximately 9:43 PM, Ms. [B.] called 911 to report that she had been raped by the Defendant. Officers arrived at her home about 10 minutes later and noted that the victim was crying and visibly upset. Ms. [B.] stated that she sort of woke up when she felt someone performing oral sex on her[.]  [S]he thought it was her boyfriend.  However, she fully awoke when this person inserted his penis into her vagina. She opened her eyes and saw it was the Defendant, not her boyfriend. The Defendant ran from the bedroom and Ms. [B.] immediately called her boyfriend. The very next phone call she made was to the police.

        While officers were on scene, the Defendant walked by and agreed to speak with them. He denied having any type of sexual encounter with Ms. [B].

        Ms. [B.] went to York Hospital to have a [Sexual Assault Forensic Examiner ("SAFE")] nurse examine her. The following day officers picked up the examination kit and it was submitted to a lab for testing. The Defendant's DNA (saliva) was found [on at least one of the swabs contained in the rape kit.]

Trial Court Opinion, 3/30/15, at 1-2.

As it relates to one of the issues that Appellant levels on appeal, we note that Appellant objected to the trial court's jury charge defining unconsciousness for the purpose of rape, IDSI, and indent assault as "when [a person] lack[s] the conscious awareness that they would possess in the normal waking state." N.T., 10/7/14, at 423; *see also id*. at 424, 428 (repeating the nearly identical definitions for IDSI and indecent assault ). The objections were overruled and Appellant was convicted of the three foregoing offenses as well as sexual assault.  The court imposed six to fourteen years imprisonment for rape and a concurrent term of five to ten

years for sexual assault. IDSI and indecent assault merged with rape for the purpose of sentencing.

Appellant filed a post-sentence motion challenging, *inter alia*, the weight of the evidence supporting the convictions. The trial court denied the motion, and this timely appeal followed. Appellant complied with the trial court order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), wherein he asserted five complaints that counsel reiterated on appeal as follows:

> I. Whether the evidence was insufficient to sustain the conviction for rape, IDSI and indecent assault in that the Commonwealth failed to present sufficient evidence regarding whether the victim was unconscious?
>
> II. Whether the trial court erred in deviating from the standard jury instruction regarding the definition of unconsciousness as an element of rape, IDSI and indecent assault?
>
> III. Whether the the trial court abused its discretion by denying Appellant's post[-]sentence motion arguing that the [jury's] verdicts were against the weight of the evidence as:
>
> A. Victim's testimony was not credible as her testimony was inconsistent and . . . contradictory;
>
> B. Victim's testimony contradicts the jury's finding that she was unconscious;
>
> C. The Commonwealth's witnesses testified about key facts regarding the incident, such that it was error for the jury to believe them[.]
>
> IV. Whether the trial court erred [or] abused its discretion in denying Appellant's request for a mistrial during jury selection?

[V.] Whether the trial court erred in overruling Appellant's objection to the admission of the DNA . . . evidence?

Appellant's brief at 6.

On October 6, 2015, Attorney Semke filed a petition to withdraw from representation pursuant to **Anders**, and he filed a **Santiago** brief outlining the claims that Appellant sought to assert on appeal and explaining why each was frivolous. On October 29, 2015, Appellant filed a *pro se* petition to discontinue this appeal in order to file a PCRA petition asserting that Attorney Semke provided ineffective assistance during the jury trial. Since Appellant is not entitled to hybrid representation, we cannot address the *pro se* petition until we first grant counsel's **Anders** petition to withdraw from representation. **See generally Commonwealth v. Ellis**, 626 A.2d 1137 (Pa. 1993) (hybrid representation proscribed on appeal); **Commonwealth v. Jette**, 23 A.3d 1032, 1040 (Pa. 2011) (same).

First, we consider counsel's petition to withdraw. In order to be permitted to withdraw, counsel must meet three procedural requirements: 1) petition for leave to withdraw and state that, after making a conscientious examination of the record, counsel has concluded that the appeal is frivolous; 2) provide a copy of the **Anders** brief to the defendant; and 3) inform the defendant that he has the right to retain private counsel or raise, *pro se*, additional arguments that the defendant deems worthy of the court's attention. **Id**.

Attorney Semke's petition to withdraw sets forth that he made a conscientious review of the record and concluded that the appeal is wholly frivolous. He informed Appellant that he was seeking to withdraw and furnished him with a copy of the **Anders** brief. Further, counsel told Appellant that he had the right to retain new counsel or could proceed on a *pro se* basis and raise any additional issues he deemed worthy of this Court's review. A copy of counsel's letter to Appellant is appended to the petition to withdraw. Thus, counsel complied with the procedural aspects of **Anders**.

We must now examine whether counsel's **Anders** brief meets the substantive elements of **Santiago**. Pursuant to **Santiago**, an **Anders** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra** at 361.

In his brief, counsel summarized the factual and procedural history of the case and referenced the portions of the record that ultimately fail to support any issues of merit. Counsel delineated case law that establishes that the foregoing issues raised by Appellant are frivolous. Thus, the brief is compliant with **Santiago**.

The first set of issues that Appellant presents challenges the sufficiency of the evidence in support of the convictions for rape, IDSI, and indecent assault. He argues that the Commonwealth did not adduce sufficient evidence to demonstrate beyond a reasonable doubt that the victim was unconscious, an element of each of the challenged offenses. Specifically, he argues that since the victim testified that she was able to recall the ordeal, she was necessarily conscious as a matter of law. For the following reasons, we disagree.

In conducting a sufficiency of the evidence review, we examine all of the evidence admitted, even improperly admitted evidence. **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider the evidence in the light most favorable to the verdict winner, herein the Commonwealth, drawing all possible inferences from the evidence in favor of the Commonwealth. **Id**. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. **Id**.

The evidence need not preclude the possibility of innocence entirely. The fact finder is free to believe, in whole or in part, whatever evidence it chooses. **Id**. Additionally, the Commonwealth may prove its case by circumstantial evidence alone. It is only when "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances," that the defendant is entitled to relief.

*Id*. This Court is not permitted "to re-weigh the evidence and substitute our judgment for that of the fact finder." *Id*.

In *Commonwealth v. Erney*, 698 A.2d 56 (Pa. 1997) our Supreme Court addressed the definition of "unconscious" within the context of § 3121 regarding rape of an unconscious person. After reviewing the legislative intent of the rape statute and the dictionary definitions of unconscious, conscious, and consciousness, the High Court concluded that the evidence adduced in that case sustained the rape conviction even though the victim, who was in an alcohol and marijuana induced daze, had some recollection of the sexual assault. Specifically, the court reasoned,

> [D]espite [the victim's] ability to perceive some aspects of the incident, her lack of knowledge of much of what occurred supports the finding that she was unconscious during portions of the assault and was, therefore, **unable to consent to sexual intercourse**. Because there was ample evidence from which the jury could properly find that the victim, during at least portions of the assault, lacked knowledge or awareness of both her own sensations and external events, and was not in the normal waking state, the evidence was sufficient to support the finding that she was unconscious within the meaning of the statute.

*Id*. at 59 (emphasis added).

Herein, the victim testified that Appellant performed oral sex upon her while she was in a drunken stupor. N.T., 10/7/14, at 142, 144-145. Although she was marginally aware that the sex act was occurring, she was not fully awake and mistook Appellant for her boyfriend. *Id*. at 142. In fact, it was not until Appellant inserted his penis into the victim's vagina that

she opened her eyes, awoke fully, and realized that Appellant had assaulted her. *Id*. at 142-143, 145. Thus, like the factual scenario the Supreme Court reviewed in *Erney*, there was ample evidence in the case at bar for the fact finder to conclude that the victim lacked an awareness and was not in the normal waking state during the assault. Thus, as our High Court determined in *Erney*, we conclude, herein, that the Commonwealth adduced sufficient evidence to demonstrate beyond a reasonable doubt that the victim was unconscious within the meaning of the statute. Thus, no relief is due.

Next, we address the group of issues that attack the weight of the evidence. Appellant levels an interrelated claim that contests the credibility of the Commonwealth's witnesses, including the victim, and challenges the jury's determination that the victim was unconscious. Again, no relief is due.

When we review a weight-of-the-evidence challenge, we do not examine the underlying question but the trial court's exercise of discretion in resolving the claim. *Commonwealth v. Leatherby*, 116 A.3d 73 (Pa.Super. 2015). This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. *Id*. Simply put, "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id*. at 82. A new trial is warranted in this context only when the verdict is

"so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014).

Instantly, the victim and Commonwealth witnesses testified unequivocally about the particulars of the sexual assault. In rejecting Appellant's post-trial motions, the trial court noted that any inconsistences in the witnesses' testimony were inconsequential. Moreover, it highlighted that, while the victim previously made an isolated out-of-court statement to her boyfriend indicating that Appellant merely "tried to penetrate" her, the context of that statement and the fact that the victim's testimony about the rape was unwavering led the court to conclude that the jury's credibility determination was unassailable. As the record supports the court's conclusion that the jury's guilty verdicts were not so contrary to the evidence as to shock one's sense of justice, we find no abuse of discretion in the trial court's denial of his weight-of-the-evidence claim.

Appellant's next claim is that the trial court erred in deviating from the standard jury instruction regarding the definition of unconsciousness as an element to rape, IDSI, and indecent assault. While the standard instructions do not define unconsciousness, the court's charge advised, "a person is unconscious when they lack the conscious awareness that they would possess in the normal waking state." N.T., 10/7/14, at 423. In overruling

Appellant's objections, the trial court concluded that the deviation was minimal and its elaboration as to the definition of unconsciousness was warranted to explain the law as to an unconscious victim.  We find no basis to disturb the trial court's conclusion.

In **Commonwealth v. Cook**, 952 A.2d 594, 626-627 (Pa. 2008), we outlined the appropriate standard of review as follows: "in reviewing a challenged jury instruction, an appellate court must consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue."  We review "a jury charge for reversible and prejudicial error."  **Commonwealth v. Trill**, 543 A.2d 1106 (Pa.Super. 1998).  Indeed, the trial court is afforded deference in framing its instructions and a deviation from the suggested instruction or a technical inaccuracy in a jury instruction that otherwise expresses the law adequately, accurately, and clearly does not mandate reversal. **Id**. at 1114.

The respective standard jury instructions for Rape, IDSI, and indecent assault invoke but, do not define, the term "unconscious."  **See** Pa.S.S.J.I.(Crim) 15.3121B; Pa.S.S.J.I.(Crim) 15.3123B; and Pa.S.S.J.I.(Crim) 15.3126B.[1]  Accordingly, in charging the jury, the trial

---

[1] Both Pa.S.S.J.I.(Crim) 15.3121B and Pa.S.S.J.I.(Crim) 15.3123B relating to rape and IDSI, respectively, provide that "A person commits [rape or IDSI] if he or she has [sexual or deviate sexual] intercourse with another person who is unconscious, or who is known by the perpetrator to be
*(Footnote Continued Next Page)*

court supplemented the standard instructions with a definition of the term that was clearly inspired by our High Court's discussion in **Erney**, **supra**, at 59, *i.e.*, whether the victim "lacked knowledge or awareness of . . . sensations and external events, and was not in the normal waking state[.]" Hence, the trial court's enhancement was consistent with the definition of "unconscious" that our Supreme Court established specifically in relation to rape and related offenses. Moreover, when viewed in their entirety, the trial court's instructions as to rape, IDSI, and indecent assault all fairly conveyed the elements of the respective offenses and accurately expressed the meaning of unconscious in this context. Since Appellant cannot establish reversible error, his claim fails.

Appellant's fourth issue asserts that the trial court erred in denying his request for a mistrial during jury selection. The following facts are relevant. During *voir dire*, the Commonwealth asked members of the jury pool if they or someone they knew had been the victim of rape or a similar sexual offense. A few potential jurors provided emotional, sometimes detailed, accounts of sexual assaults and noted their inability to remain impartial. N.T., 10/7/14, at 24-26. One juror reported a story concerning the rape and

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

unaware that intercourse is occurring, or who is mentally disabled and therefore incapable of consent." Likewise, Pa.S.S.J.I.(Crim) 15.3126B, the suggested instruction for indecent assault, references "unconscious" in framing the second and third elements of that offense, but it does not define the term.

attempted murder of a babysitter. Another juror informed the court that his daughter became pregnant as a result of rape. Two other jurors relayed their accounts at sidebar. *Id*. 45-47. All of the jurors who indicated an inability to remain impartial were excused for cause outside of the hearing of the remaining jurors in the pool.

Despite these prophylactic measures, Appellant moved for a mistrial based upon his belief that the affected jurors' emotional reactions tainted the remaining members of the pool, and thus deprived him of an impartial jury. The trial court denied Appellant's request summarily and subsequently explained that it did not believe that the responses that were stated in front of the entire pool were particularly prejudicial. *Id*. at 52; Trial Court Opinion, 6/16/2015, at 11 ("We denied [the] request because we did not think that the emotional response from potential jury members prejudiced the Appellant. . . . [W]e cannot conclude that the other jurors were so tainted that we abused our discretion in denying the Appellant's request for a mistrial."). Upon review, we agree.

We review the denial of a request for a mistrial for an abuse of discretion. *Commonwealth v. Caldwell*, 117 A.3d 763 (Pa.Super. 2015). In *Caldwell* we reiterated, "A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Id*. at 774 (citation omitted). Further, "It is within the trial court's discretion to determine

whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial." *Id*.

Presently, all of the potential jurors who indicated an inability to be impartial were stricken from the jury pool outside of the remaining jurors' hearing. Furthermore, beyond their sexual nature, the factual accounts that supported Appellant's request for a mistrial were not so offensive as to affect the remaining potential jurors, who all subsequently avowed to remain impartial. As such, the trial court's denial of the request for mistrial did not constitute an abuse of discretion. **See Commonwealth v. Frazier**; 410 A.2d 826, 831 (Pa.Super. 1979). (where all empaneled jurors were questioned at *voir dire* to determine impartiality, prior statements made by two prospective jurors in front of jury pool indicating predetermination of defendant's guilt was not so prejudicial as to require grant of mistrial); **Caldwell supra** (mistrial required only when unavoidable effect of incident is to deprive defendant of fair and impartial trial). No relief is due.

Appellant's final claim is that the trial court erred in failing to sustain his objection to the Commonwealth's presentation of a DNA report during the jury trial. He argues that the Commonwealth did not establish the location on the victim's body from which his DNA was recovered. He continues that, without this foundation, the report was inadmissible. Appellant's claim is faulty.

Our Supreme Court recently echoed our standard of review as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Poplawski*, 130 A.3d 697, 716 (citations omitted) (internal quotation marks omitted).

First, we summarize the relevant facts. During the jury trial, the Commonwealth presented Angela Schultheis as a forensic DNA expert. Ms. Schultheis testified that she tested the swabs included in the rape kit prepared by the SAFE team and discovered Appellant's DNA. N.T., 10/7/14, at 290. As noted, Appellant assailed the admissibility of that report on the basis that it is unclear from where on the victim's body the swabs were taken. In rejecting this position from the bench, the trial court mistakenly relied upon the Commonwealth's representation that the victim's vagina was the only area that had been swabbed. Nevertheless, the trial court accurately concluded that, to the extent that the record is unclear regarding the area of the victim's body from which Appellant's DNA was recovered, that uncertainty relates to the weight of the DNA evidence and not to its admissibility. In fact, the trial court invited Appellant to resurrect this position during closing arguments. The court opined, "I am going to overrule your request to strike the DNA results. I think certainly you can

argue that [the location] may not have been in the testimony . . . . I think there's enough there for the Jury to connect the dots . . . [b]ut you're certainly free to argue that issue." *Id*. at 297.

Although Appellant did not correct the court's misinterpretation of the testimony, the certified record reveals that Geneva Keirn, that SAFE nurse who examined the victim and assembled the rape kit following the sexual assault, testified that she swabbed everything listed on the sexual assault checklist except underneath the victim's fingernails. *Id*. at 231. As the checklist was not included in the certified record, it is unclear where the respective swabs were applied. Nevertheless, as the trial court cogently highlighted, this uncertainty does not preclude the admission of the DNA report. At most, it provided Appellant a platform to challenge the weight of the Commonwealth's evidence, which it suggested Appellant assert during his closing arguments. As the trial court did not abuse its discretion in admitting the DNA evidence, Appellant's challenge fails.

In sum, for all of the foregoing reasons, we concur with Attorney Semke's assessment that Appellant's claims are wholly frivolous. In addition, we conducted an independent review of the record and found that there are no other issues of arguable merit that can be raised in this appeal. Hence, we permit Attorney Semke to withdraw.

Having granted counsel's petition to withdraw from representation, we are now permitted to resolve Appellant's *pro se* petition to discontinue this

appeal. As referenced *supra*, Appellant desires to withdraw this appeal so that he may file a PCRA petition asserting that trial counsel provided ineffective assistance. Neither Attorney Semke nor the Commonwealth responded to Appellant's *pro se* filing. Upon review of the motion to discontinue, the relevant legal authority, and the certified record, we grant the requested relief and discontinue this appeal. [2]

Petition of Marc J. Semke, Esquire, to withdraw as counsel is granted. Appeal discontinued.

Judge Ott Joins the majority.

Justice Fitzgerald concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2016

---

[2] In light of our independent review of the record and our confirmation that no non-frivolous issues have been preserved for review on direct appeal, it was tempting, at least initially, to deny the *pro se* motion for discontinuance and affirm the judgment of sentence. However, upon consideration of the procedural implications of that disposition, we elected to grant the relief Appellant expressly requested.